### J. M. CUTHBERTSON v. ENOCH MORGAN.

(Filed 5 November, 1908).

1. Deeds and Conveyances—Reformation—Evidence—Questions for Jury.

In an action to correct or reform a written instrument, when there is more than a scintilla of evidence, it is for the jury, and not the Court, to say whether the evidence is clear, cogent and convincing.

2. Deeds and Conveyances—Reformation—Equitable Relief—Covenants—Support—Charge on Land.

Defendant executed a note, and to secure it executed a mortgage on his land. Thereafter, he entered into a written contract with plaintiff to convey to him a remainder in interest in one-half the land, upon condition that he would pay off the note and mortgage in small annual instalments; and if, at the time the mortgagee demanded payment, the plaintiff could not meet it, he would find some one to carry it, in which event defendant and his wife were to "renew the note and mortgage." Upon the payment of the note and mortgage or any renewal or renewals thereof, the defendants were to execute a deed to the land, reserving a life estate. The plaintiff paid a small amount on the debt and, being forced to do so, borrowed the balance and called upon defendants to join with him in securing it by mortgaging the land, and instituted action upon their refusal. Upon allegation and proof, defendants, by the verdict of the jury, engrafted a parol contract upon the written one, that, in addition, the plaintiff was to take care of defendants during life and see that they do not suffer. *Held*, (1) That as plaintiff, after the verdict, asked for a decree for reformation and specific performance, he is entitled in equity to have the defendants execute the mortgage in renewal, or substitution; (2) That the agreement of support, etc., is a covenant and not a condition precedent; (3) That

defendants' support, or an amount reasonably sufficient therefor, in their condition in life, should be fixed and made a charge on the land; (4) That, if so desired, a reference should be had to ascertain what, if anything, is due on account of defendants' support in the past.

ACTION tried before *Jones, J.,* and a jury, February Term, 1908, of UNION.

The pleadings, evidence and verdict disclose the following case: Defendant, Enoch Morgan, was the owner of the tract of land described in the complaint, on which he resided for many years. He married the *feme* defendant, Esther, the mother of the plaintiff, by a former marriage. Plaintiff was, at that time, about five years of age and lived with defendants, on the land in controversy, until he was about eighteen years of age. On 27 March, 1902, defendant, Enoch Morgan, executed his note to Charles N. Simpson for $248.35, and, to secure the payment thereof, he, with his wife, executed a mortgage on said land. On 24 August, 1903, the defendant Enoch Morgan, with his wife and plaintiff, executed a contract in writing, whereby the defendants agreed to convey to plaintiff the portion of said land described in the contract, being one-half of the tract, reserving to themselves and the survivor a life estate. Plaintiff, in consideration of said promise to convey, agreed to pay off and discharge the note and mortgage to Simpson, in annual instalments of $40. It was further agreed, and so written in the contract, that if plaintiff was unable to pay said debt at the time Simpson demanded payment, he should find some one to carry it and, "if it should be necessary to that end, said Enoch Morgan and wife are to renew the note and mortgage." The contract concludes with these words: "Now, on payment of said note and mortgage, or any renewal or renewals thereof, the said Enoch Morgan and wife Esther are to execute and deliver to said J. Madison Cuthbertson a deed in fee simple for said tract of land, reserving a life estate for them and the survivor of them in that por-

tion above mentioned, and then this contract shall be fully performed." The contract was duly proven and recorded. Plaintiff paid $40 on the debt, and borrowed from L. S. Griffin the sum of $300 with which to pay the balance, executing to H. B. Adams, Esq., a deed in trust on the said land for the purpose of securing the payment of said $300. The following words are endorsed on the note: "Paid in full by J. Madison Cuthbertson, 5 January, 1907. C. N. Simpson." Plaintiff demanded that defendant execute a deed to him or join in the mortgage to secure the amount borrowed to take up the Simpson note, which defendant refused to do. Defendant claimed that, in addition to paying the Simpson note, plaintiff was to maintain and support his wife and himself, and that this promise was a part of the consideration for the conveyance of the land. He also claimed that this part of the agreement was omitted from the contract by the mistake or inadvertence of the draftsman. The defendant, at all times, continued to live on the land, cultivating or renting it, and using the produce made thereon; he made no demand upon plaintiff for any support. Morgan says: "I gave it to him to pay Mr. Simpson a little money that was between me and him—no other consideration. He was to take care of me and my wife and see that we don't suffer for anything." There was testimony tending to sustain and also to contradict the defendant's contention in respect to the agreement to take care of him. Mr. Simpson, who drew the contract, testified that "all of the parties were present, that he drew the contract at the request of Enoch Morgan." "They all rehearsed what they agreed to do and asked me to fix the paper. I drew the paper and asked them if that was what they wanted, and they all agreed to it. I had them all then to sign it and I witnessed it. I just read it over to them; they told me what they wanted, and they agreed to the paper that I drew. This clause about providing for a renewal of mortgage in case I did not want to wait, was really a suggestion of mine, but

they approved that part of it and readily assented to it." He says he did not suggest to plaintiff to go into it; knew nothing about it until they came to him; he did not remember that anything was said about plaintiffs supporting defendants. Defendant Esther Morgan corroborated plaintiff and Simpson in regard to the agreement and what occurred when it was written. There was evidence that plaintiff put permanent improvements on the land. Upon issues submitted, the jury found that the contract was executed and written, and that defendant had refused to execute the mortgage in renewal of the one held by Simpson; that it was a part of the consideration of the contract that plaintiff should maintain and support the defendant, as alleged in the answer; that this part was omitted from the contract by mistake or inadvertence of the draftsman; that plaintiff had not complied with his part of the contract and that the value of the improvements put upon the land by plaintiff was $300. The plaintiff moved for judgment upon the verdict, that the contract be reformed in accordance with the verdict. Refused, and plaintiff excepted. He then moved for judgment for the value of his improvements. Refused, and plaintiff excepted. His Honor rendered judgment that plaintiff was not entitled to a conveyance of the land; that the debt due L. S. Griffin of $300 be declared a lien upon the land, and that defendant execute a mortgage to secure same. Plaintiff excepted. There were other exceptions to the admission and rejection of testimony and to instructions to the jury. Plaintiff appealed.

*Adams, Jerome & Armfield* for plaintiff.
*Redwine & Sikes* for defendant.

CONNOR, J., after stating the case: We have examined the record and exceptions in regard to the conduct of the trial, including his Honor's instructions to the jury, and find no prejudicial or reversible error. His Honor instructed the jury, upon the issue directed to the alleged mistake in the

contract, in accordance with the decisions of this Court. It must, we think, be conceded that the evidence, in this respect, was not so "clear, cogent and convincing" as would have been required by a Chancellor, under the procedure prevailing prior to the change in our system of administering equitable remedies. The weight of the evidence, conceding that all of the witnesses were speaking truly, was against the contention of the defendant in that respect. Having held, however, that although the evidence must be "clear, cogent and convincing" to entitle a party to correct or reform a written instrument, the Court had no right to withhold the case from the jury. If there was more than a scintilla of evidence, we cannot hold, as a matter of law, that the evidence is not "clear, cogent and convincing," that being for the jury. *Lehew v. Hewit,* 130 N. C., 22. The protection which the law theoretically throws around the rights of parties who have reduced their contracts to writing, is made of but little practical value when the jury may set aside the written word upon testimony which a Chancellor would consider entirely insufficient. In this record it appears, without serious contradiction, that the parties voluntarily went to an intelligent, disinterested draftsman, stated their agreement, and after having read it to them, expressed themselves as satisfied and executed it. Two of the parties and the draftsman testified to this and, upon the testimony of the other party, an additional provision is inserted in the contract. It will be observed that only half the land is to be conveyed and, in this, defendants reserve a life estate, hence the plaintiff does not come into possession of any property from the proceeds of which he can pay the Simpson debt and provide support for defendants. The defendants knew that plaintiff was a man of small means and contemplated that he would be unable to pay the debt at once, provided that he should pay it in annual instalments of forty dollars and, provided further, that if Simpson demanded payment prior to the time plaintiff was to pay,

according to the contract, that they would execute mortgage in renewal of the one to Simpson.   The plaintiff was therefore entitled to have them execute the mortgage under the terms of the contract, as written and executed. The defendant Enoch Morgan refused to carry out his part of the contract in respect to executing the new mortgage, alleging that, as an additional consideration for conveying the land, plaintiff was to support him and his wife and "see that they did not suffer for anything," and this provision was omitted by mistake. To avail himself of this contention he was compelled to invoke the equitable power of the Court. Until the contract was reformed they were unable to resist the plaintiff's equity to compel them to execute the mortgage.     The fact that they invoked the aid of the Court, by way of defense or counterclaim, is not material.    If, after the facts were found, the plaintiff had refused to submit to a decree for reformation and specific performance, of course the Court would have dismissed his action.    He, however, asks the Court to reform the contract and permit him to perform his part of it as reformed.   This, we think, he had a right to do under the maxim, "He who asks equity must do equity."    In regard to this well established equitable maxim, Prof. Pomeroy says:   "Whatever may be the nature of the controversy between two definite parties, and whatever the nature of the remedy demanded, the Court will not confer its equitable relief upon the party seeking its interposition and aid, unless he has acknowledged and conceded, or will admit and provide for, all the equitable rights, claims and demands justly belonging to the adversary party and growing out of, or necessarily involved in, the subject matter of the controversy.    It says, in effect, that the Court will give the plaintiff the relief to which he is entitled only upon condition that he has given, or consents to give, the defendant such corresponding rights, as he also may be entitled to in respect to the subject matter of the suit." Pom.

Eq., sec. 385. It will be observed that one of the limitations of the doctrine is that the counter equity, which the Court will enforce in such cases, must be involved in, or grow out of the transactions in respect to which the equitable relief is in-voked, or, as said by the same author, "According to its true meaning the terms imposed upon the plaintiff, as the condition of his obtaining the relief, must consist of the awarding, or securing, to the defendant something to which he is justly entitled by the principles and doctrines of equity." *Ib.,* 386. The Court will not, arbitrarily, impose conditions or require him to pay for the relief by doing, or abstaining from doing, something demanded by the other party against whom the relief is granted, separate and distinct from the transaction involved in the litigation out of which the demand for relief grew. For instance, if the plaintiff will seek to enjoin the sale of his property under mortgage, because of usury charged for the loan of the money secured, the Court will grant the relief upon condition that he pay the debt with lawful interest, or, if one seek to redeem his land from a tax sale for irregularities, sufficient to entitle him to relief, it will be granted upon payment of the lawful taxes paid by defendants, and this is true independently of any statutory requirement. In *Morisey v. Swinson,* 104 N. C., 555, it is said: "When a plaintiff seeks to correct a deed in his own favor, the Court will refuse its aid unless he is willing that the other mistakes therein should be corrected which would be against his inter-est." He who asks equity must do equity. It would seem that, applying this maxim of equity to the facts before us, the defendants should be required, before, or as a condition to having the contract reformed, to specifically perform on their part, when the plaintiff expresses a willingness to per-form his covenants. It would be unjust to the plaintiff to grant relief to the defendants by reforming the contract and, at the same time, construe the inserted language as a con-dition precedent and declare a forfeiture of all rights under

it. It has always been the pride of equity that it so moulds its decrees that perfect and complete justice is done in cases where the law, by reason of its rigid, stringent rules, is incapable of doing so. The law will, when possible, so construe an instrument as to avoid forfeitures, and equity delights, when invoked, to relieve against them by giving compensation for failure to comply, rather than destroying the rights of parties. It was upon this principle that courts of equity created the equity of redemption and preserved the mortgage, which, at law, was a dead pledge, into a living security for the debt, and saved to the debtor the right to redeem his land, which, according to the terms of his solemn deed, was forfeited upon failure to pay, to the uttermost farthing, on the day named. If it be conceded that, by the terms of the contract, as reformed, the plaintiff had forfeited not only his rights, under the contract, but the amount expended in permanent improvements, we think that the defendants should have been required as a condition to having the contract reformed to waive the forfeiture.

But we are of the opinion that, as reformed, the provision in regard to support was not a condition but a covenant, the performance of which should be secured by declaring it a charge on plaintiff's interest in the land to be enforced in such way as the Court may determine. We had occasion to consider a similar question in *Helms v. Helms,* 135 N. C., 164, and upon a rehearing in 137 N. C., 206. Following the line of thought and the authorities cited in that case, it is apparent that if the language, very indefinite and uncertain, is construed to be a condition, the plaintiff might, probably would, find that, upon paying the incumbrance on the land and performing the terms of the condition for many years, he would be subjected to loss of his money and the land, up to the last moment of the lives of defendants. To so construe the contract, as reformed, would be to administer equity to the defendants and, at the same time, apply to plaintiff

the rigid rules of the law, because a condition precedent must, at law, be fully complied with, or the party upon whom the performance of the terms of the condition is imposed loses all of his rights under the contract. Of course, if the contract clearly imposes a condition, the law will enforce it. It is neither the duty nor the province of Courts to make contracts for parties, or to change those which they have made, but to so construe them, that, so far as can be ascertained, their purpose and intention are effectuated. There are no words of condition in this contract. The language of *Smith, C. J.*, in *McNeely v. McNeely*, 82 N. C., 183, in a similar case, is applicable here. Speaking of a covenant to support persons incorporated in a deed, he says: "The words are, in themselves, vague and indefinite and, if an essential and defeating condition of the gift, would be very difficult of application. What is meant by a 'seeing to the widow' and what neglects fall short of that duty?" In *Gray v. West*, 93 N. C., 442, the language in the deed was, "That A should have support out of the land." *Held,* that the support was a charge on the rents and profits. *Misenheimer v. Sifford,* 94 N. C., 592, and other cases cited in *Helm's Case, supra.* In that case, it was insisted that the language in the deed should be construed a condition precedent. While in this case the plaintiff has but an executory contract, it confers upon him rights corresponding to the duties assumed by him which a Court will protect and enforce. He cannot call for a deed until he pays the amount due on the Simpson debt or relieves the defendants and their land of any liability therefor, but, according to the terms of his contract, he is entitled to require the defendants to execute a mortgage in renewal of the Simpson mortgage, or by way of substitution of it. The defendants are entitled to have their support or the amount which is reasonably sufficient therefor, under the conditions, age, health, etc., fixed and charged upon plaintiff's interest in the land. So far as

the failure of the plaintiff to support the defendants, since the making of the contract, is concerned, it seems that no demand was made on him and neither party treated the contract as imposing such duty upon plaintiff. The defendants had all that was made on the land and do not appear to have suffered. If so desired, a reference may be had to ascertain what, if anything, is due on that account. We are quite sure that, in the light of our decision, the intelligent counsel representing both parties will be able to draw a decree which will protect the interests of the parties. The contract is unusual in some of its provisions and some adjustment and concessions will probably have to be made to prevent further expensive litigation. It is to the interest of all concerned to do so. The judgment must be modified as indicated in this opinion. It is so ordered.

Modified and affirmed.