**INTERNATIONAL TELEPHONE & TELEGRAPH CORPORATION, Plaintiff,**

v.

**GENERAL TELEPHONE & ELECTRONICS CORPORATION and Hawaiian Telephone Company, Defendants.**

Civ. No. 2754.

United States District Court District of Hawaii.

Jan. 16, 1969.

Joseph L. Alioto, Maxwell M. Blecher, Harold R. Collins, Jr., San Francisco, Cal., Damon, Shigekane & Char, Vernon F. L. Char, Honolulu, Hawaii, Howard J. Aibel, Edwin A. Kilburn, Herbert A. Steinke, Jr., Scott E. Bohon, New York City, for plaintiff.

Jenks, Kidwell, Goodsill & Anderson, Marshall M. Goodsill, Jr., Martin Anderson, Honolulu, Hawaii, Hopkins, Sutter, Owen, Mulroy, Wentz & Davis, Thomas R. Mulroy, Chicago, Ill., Theodore F. Brophy, New York City, for defendant General Telephone & Electronics Corporation.

Jenks, Kidwell, Goodsill & Anderson, Marshall M. Goodsill, Jr., Martin Anderson, Honolulu, Hawaii, for defendant Hawaiian Telephone Company.

## MEMORANDUM DECISION ON PLAINTIFF'S MOTION TO STRIKE THE SECOND, THIRD AND FOURTH AFFIRMATIVE DEFENSES OF DEFENDANT GENERAL TELEPHONE & ELECTRONICS CORPORATION

PENCE, Chief Judge.

Plaintiff is suing under Section 16 of the Clayton Act (Title 15 U.S.C. § 26) and Section 11 of Act 190 of the Hawaii Laws of 1961 for injunctive relief from defendants' alleged violations of the federal and state antitrust laws. Defendant General Telephone & Electronics (GT&E) has asserted the doctrines of laches and/or statute of limitations,[1] estoppel,[2] and unclean hands[3] as affirmative defenses to some or all of plaintiff's charges. Plaintiff has moved to strike these defenses as insufficient and immaterial as a matter of law. Plaintiff's motion was granted orally on August 2, 1968, and this is but the formal written decision thereon.

I. *Second Affirmative Defense: Laches and/or Statute of Limitations*

Paragraph 1 of plaintiff's prayer for relief requests that the following acquisitions of GT&E be adjudged violations of Sections 1 and 2 of the Sherman Act (Title 15 U.S.C. §§ 1, 2) and Section 7 of the Clayton Act, as amended (Title 15 U.S.C. § 18):

1. 1950—GT&E acquired the capital stock of Leich Electric Co.;

2. 1954—GT&E acquired the stock or assets of Automatic Electric Company;

3. 1959—GT&E acquired the stock or assets of Lenkurt Electric Co., Inc.; and

4. 1964—GT&E acquired the stock of California Water & Telephone Company, West Coast Telephone Company, The Southwestern States Telephone Company, and Western Utilities Corporation (all referred to as the Western Utilities groups).

Defendant contends "such relief is barred by reason of laches *and* the statute of limitations (Section 4B of the Clayton Act * * *)." (Emphasis

---

1. Second Affirmative Defense, Answer To Amended Complaint and Counterclaim (filed February 20, 1968), paragraphs 31–32.

2. Third Affirmative Defense, Answer, paragraphs 33–52.

3. Fourth Affirmative Defense, Answer, paragraphs 53–67.

added.)[4] Defendant has abandoned this defense insofar as it relates to the 1964 acquisition of the Western Utilities group, which occurred within four (4) years of the filing of this lawsuit (October 18, 1967).[5]

Clayton § 4B[6] provides that any "action under [Clayton] sections 4 or 4A shall be forever barred unless commenced within four years after the cause of action accrued." Since plaintiff initiated this lawsuit solely under Clayton § 16 for injunctive relief, the § 4B statute of limitations applying to Clayton Act actions for money damages is, by its very language, not, per se, applicable to this proceeding. Defendant's second affirmative defense is therefore limited to the equitable doctrine of laches, which, for the purposes of this action, defendant equates to the statute of limitations.

Defendant stated its position in the context of and relies primarily[7] on Farbenfabriken Bayer, A. G. v. Sterling Drug, 197 F.Supp. 627 (D.N.J.1961): (Id. note 5 supra.)

"When I say laches here, I am talking about laches in the sense of an equitable remedy being linked to a legal right, the equitable remedy being Section 16 linked to a legal right, which is Section 7 of the Clayton Act, and Sections 1 and 2 of the Sherman Act.

"The plaintiff isn't suing for damages. The one thing he is after is an equitable remedy of an injunction, divestiture, some equitable remedy. Now, it's linked to the legal rights given by statute, Clayton 7 and Sherman 1 and 2. Those legal rights in the antitrust laws, Sherman 1 and 2 and Clayton 7, are subject to Section 4, statute of limitations, Section 4B, four years.

\* \* \* \* \* \*

" \* \* \* [W]hen I say laches now, I am talking about laches which is the four-year period, because it is the statute of limitations of the legal rights upon which they ask for the equitable remedy."

Plaintiff urges that an action for divestiture under the antitrust laws is timely if, at the time of filing, there appears a reasonable likelihood any acquisition will lessen competition, citing United States v. E. I. Du Pont De Nemours & Co., 353 U.S. 586, 77 S.Ct. 872, 1 L.Ed.2d 1057 (1957). Plaintiff maintains *Du Pont* permits suit whenever "the acquisition threatens to ripen into a prohibited effect."[8] Defendant counters that *Du Pont* is distinguishable since it was a government suit and immune from any laches defense. Defendant construes plaintiff's position as conceding that an acquisition which constituted a violation at the time made is subject to attack for laches, arguing that, at most, *Du Pont* introduces a fact question (e. g., when the violation occurred) which precludes summary judgment as an alternative to a motion to strike.

Clayton 4B is limited to actions for money damages initiated under Clayton 4 or 4A by private parties or the federal government. Clayton 4B does not

4. Defendant has abandoned that portion of its pleading relating to § 22 of Act 190 of the Hawaii Laws of 1961, since plaintiff does not maintain that the listed acquisitions in any way violate that Act. (R.T. August 1, 1968 at 104–05.)

5. R.T. August 1, 1968 at 42.

6. Title 15 U.S.C. § 15b.

7. Defendants have also pointed to United West Coast Theatres Corp. v. South Side Theatres, 86 F.Supp. 109 (S.D.Cal.1949) (defendant counterclaimed for treble damages and injunctive relief under Clayton §§ 4 and 16, and the court applied the state statute of limitations to the prayer for equitable relief), and Hoopes v. Union Oil Co. of California, 374 F.2d 480 (9 Cir. 1967) (a suit for money damages only under Clayton § 4).

8. Plaintiff's Reply To Memorandum In Opposition To ITT's Motion to Strike The Second, Third and Fourth Affirmative Defenses (filed June 12, 1968) at page 2, and Du Pont, supra, at page 597, 77 S.Ct. at page 879.

in any way specifically curtail or attach limitations to private suits under Clayton 16. If there is any such limitation on private equity proceedings, it can therefore only derive from case law.

*Sterling Drug*, supra, is the primary authority relied upon by .defendant to support its position that the Clayton 4B four year statute of limitations for Clayton 4 actions is by case law transmuted into laches and made applicable to this equitable proceeding under Clayton 16. In that case plaintiff sued on September 28, 1955, for money and injunctive relief as a result of defendant's Sherman 1 violation. A companion opinion found that such violation (an unlawful combination and conspiracy in restraint of trade in pharmaceutical products) had terminated on September 5, 1941. Previously the court had dismissed plaintiff's treble damage claim, leaving only a Clayton 16 claim for injunctive relief. In granting defendant's motion for summary judgment, the court said:

> "Section 4 of the Clayton Act * * * grants to 'any person * * * injured in his business or property by reason of anything forbidden in the antitrust laws' a right to maintain an action for treble damages. Section 16 of the Act * * * grants an *additional* right to maintain an action for injunctive relief 'against threatened loss or damage.' We are of the opinion that the equitable remedy available under Section 16 is *predicated* upon the legal cause of action created by Section 4. It is essentially an equitable remedy in aid of a legal right created by the statute. (Emphasis added.)

> "The statute of limitations, by its express terms, applies only to actions at law and may not be invoked as a defense against a claim exclusively equitable. However, where the equity jurisdiction is invoked in aid of a legal right, or is predicated upon a legal

cause of action, equity 'will withhold its remedy if the legal right is barred by the * * * statute of limitations.'" 197 F.Supp. at 629. [9]

The history of sections 4, 16 and 4B does not permit this court to agree with the conclusion that a Clayton 16 claim "is predicated upon the legal cause of action created by Section 4." Private parties were originally granted the right to seek treble damages by the Sherman Act (passed July 2, 1890), which, however, did not establish the corollary right to injunctive relief. Congress reenacted the substance of the treble damage provision on October 15, 1914 as Section 4 of the Clayton Act. Significantly, Congress at that time made a concomitant expansion of the antitrust laws by giving private parties the right to sue for injunctive relief (Clayton § 16) separate and apart from any right to monetary recovery. It was not until July 7, 1955, that Clayton 4B, which pre-empted application of state statutes of limitation to the federal antitrust laws, was added.

While the right to such injunctive relief to redress antitrust grievances may be said to be "additional" to the right to damages in the sense that it may be conjoined therewith, it may also be an alternative. As the above history manifests, the equitable remedy of § 16 is in no way "predicated upon", incidental to or derived from the legal right of § 4. The two sections expressly create wholly independent remedies, in strikingly similar language. A litigant may pull either trigger of his shotgun independently, or, at his option, he may shoot both barrels together. This is abundantly clear from the instant complaint, in which plaintiff seeks only injunctive relief. No damage claim exists herein on which any equitable remedy could be predicated. Yet defendants have not challenged plaintiff's right to maintain this suit.

In *Sterling Drug* plaintiff originally sought *both* legal and equitable relief,

---

9. It should be noted that the court initially reached the opposite conclusion. See · Farbenfabriken Bayer, A. G. v. Sterling Drug, 153 F.Supp. 589, 594 (D.N.J.1957).

and to support incorporation of the Clayton 4B four year limitations period into a laches defense applied to a Clayton 16 claim the court relied on the general principle that equity withholds its remedy when legal rights are barred. Moreover, the facts of *Sterling Drug* are markedly different from those alleged here. The violation in *Sterling Drug* consisted of a conspiracy among plaintiff's predecessors and the defendant and its predecessors, which included illegal contracts in 1920, 1923 and 1926, all of which terminated on September 5, 1941. The suit was filed in 1955. In contrast, the pleadings herein allege a cause of action growing out of successive and multiple acquisitions continuing to the year suit was brought. The prospective language of Clayton 7, in combination with, and when construed in the light of the Supreme Court's opinion in *Du Pont* bring such acquisitions into the ambit of a continuing violation. Accordingly, the instant acquisitions may be challenged at any time within (and at least for four years after) the span of such alleged violation.

The Ninth Circuit's statement in *Hoopes,* supra note 7, 374 F.2d at 486, is particularly relevant:

> "Union views appellants' claim too narrowly. The alleged antitrust violation consists of Union's entire course of conduct directed to the establishment and maintenance of exclusive dealing arrangements * * *. Acts of Union in furtherance of this purpose, which appellants contend caused them injury and damage, included Union's efforts to prevent appellants from selling or leasing their station free of the exclusive dealing condition. These acts continued until the complaint was filed and thereafter. Thus, appellants' action is not barred even if the invasion of their interests is considered to have been episodic rather than continuous."

■ The *Sterling Drug* doctrine, as applied, is in direct conflict with and contravenes the meritorious principle that equitable defenses are unavailable to defeat rights which are statutory and/or in furtherance of a strong public policy.[10] The right of private individuals to enforce the antitrust laws is both statutory and advances an important public policy. The rationale of the policy encouraging such private enforcement is to permit private parties to supplement governmental action. Private proceedings inure to the public benefit by eliminating unlawful restraints from interstate commerce. While treble recovery under § 4 provides an incentive or bonus to encourage private litigants to undertake an arduous task, in a suit for equitable relief under Clayton 16 the private plaintiff does not receive any comparable cash benefit. The elimination of an existing violation increases competition, thus benefiting the public and concurrently the private plaintiff. The law does not require that the public undergo continued subjection to antitrust violations when a champion appears, merely because of the passage of time. Antitrust violations do not become sacrosanct with age, and immunized from attack, when the public good dictates the contrary.

The force of the policy favoring private enforcement of the antitrust laws was again emphasized by the Supreme Court in Perma Life Mufflers v. International Parts Corp., 392 U.S. 134, 139, 88 S.Ct. 1981, 1984, 20 L.Ed.2d 982 (1968) when it stated:

> " * * * [T]he purposes of the antitrust laws are best served by insuring that the private action will be an ever-present threat to deter anyone contemplating business behavior in violation of the antitrust laws. The plaintiff who reaps the reward of treble damages may be no less morally reprehensible than the defendant, but the law encourages his suit to further the overriding public policy in favor of competition. A more fastidious regard for the relative moral

10. American Surety Company of New York v. Gold, 375 F.2d 523, 528 (10 Cir. 1967).

worth of the parties would only result in seriously undermining the usefulness of the private action as a bulwark of antitrust enforcement."

If a "morally reprehensible" plaintiff is not precluded from suing, certainly the contemplative, albeit tardy, one should not be subjected to harsher treatment. The private litigant, no less than the government, is entitled to the opportunity to ponder and evaluate the effect of acquisitions, and need not bull ahead indiscriminately to avoid the proscriptive doctrine of laches.

■ This court views the *Du Pont* case as controlling. In that action the government sued in 1949 for alleged Clayton 7 violations resulting from du Pont's 1917–1919 purchase of a 23% interest in General Motors. The Supreme Court squarely ruled on the question of whether that action was late, holding:

"The Senate declared the objective of the Clayton Act to be as follows:

'* * * Broadly stated, the bill, in its treatment of unlawful restraints and monopolies, seeks to prohibit and make unlawful certain trade practices * * * to arrest the creation of trusts, conspiracies, and monopolies *in their incipiency and before consummation. * * *'* (Italicized in original.)

"'Incipiency' in this context denotes not the time the stock was acquired, but any time when the acquisition threatens to ripen into a prohibited effect. * * * To accomplish the congressional aim, the Government may proceed at any time that an acquisition may be said with reasonable probability to contain a threat that it may lead to a restraint of commerce or tend to create a monopoly of a line of commerce." (Footnote omitted.) 353 U.S. at 597, 77 S.Ct. at 879, 1 L. Ed.2d 1057.

Defendant has not advanced any reason why this rule should not be available to private litigants in a like manner in a proceeding, such as this, which is primarily enforcement. If the congressional intent is accomplished by permitting government action against acquisitions thirty years following consummation, then permitting comparable private actions advances the same purpose.

## II. *Third Affirmative Defense: Estoppel*

Plaintiff has prayed that the court find GT&E's acquisition of (1) California Water & Telephone Company, The Southwestern States Telephone Company, and the West Coast Telephone Company in violation of §§ 1 and 2 of the Sherman Act and § 7 of the Clayton Act, and (2) Hawaiian Telephone Company in violation of the above listed provisions of the federal law and §§ 2, 5 and 7 of Act 190 of Hawaii Laws of 1961. Defendant answers that plaintiff had advanced actual or constructive notice of all such acquisitions, did not oppose such acquisitions before the appropriate state regulatory agencies, and is accordingly estopped from challenging such mergers in this forum. Plaintiff counters with the contention that the equitable doctrine of estoppel is not available as a matter of law in defense of private antitrust actions. Defendant replies that Clayton 16 provides that private litigants shall be entitled to injunctive relief "under the same conditions and principles" as in "courts of equity", which incorporates the defense of estoppel into the antitrust laws. Plaintiff responds that Clayton 16 merely provides when injunctions shall issue, but does not affirmatively provide antitrust defendants with all possible equitable defenses. The court is unaware of any reported decision considering this question.

■■ Plaintiff's motion to strike defendant's third affirmative defense is granted. Even accepting (without affirming) defendant's general position that the language of Clayton 16 incorporates all equitable defenses into the antitrust laws, nevertheless the specific

equitable principle that estoppel is precluded as a bar to statutory rights, or rights advancing a strong public policy is overriding and controlling here. In American Surety Co. of New York v. Gold, supra, at 528, an action against an insurer to recover punitive damages levied against the insured in a personal injury case, the insurer acknowledged responsibility for the compensatory damages, but denied liability for the punitive award, asserting such recovery was contrary to the pertinent public policy. The Tenth Circuit stated the general rule:

" 'The doctrines of estoppel and waiver do not in general apply in transactions that are forbidden by statute or that are contrary to public policy.' " 375 F.2d at 528.

Defendant's third affirmative defense is gored by each horn of this principle. The challenged acquisitions are illegal only if forbidden by federal and state statute, and, as noted above, the public policy favors private enforcement of the antitrust laws.[11] On both grounds, therefore, this defense must fall.

The same result is reached under Hawaii law. In order to minimize judicial construction of the statutory language by reference to an existing body of case law, the Hawaii antitrust statute substantially, almost verbatim, incorporated the federal statutes into the state act.[12] Accordingly, defendant's defense of estoppel to plaintiff's state law claim is similarly stricken down.

## III. Fourth Affirmative Defense: Unclean Hands

Defendant asserts that plaintiff (a) manufactures and sells communication equipment to foreign telephone companies, including Puerto Rico and the Virgin Islands; (b) acquired much of its telecommunication manufacturing capacity through illegal mergers; (c) has attempted to acquire domestic telephone operating companies; and (d) has acquired numerous companies not engaged in the communications industry—all of which constitutes unclean hands. Plaintiff insists such a defense is not available to antitrust defendants as a matter of law.

Although this defense is precluded in Clayton 4 damage actions, [13] whether or not it may be a defense in Clayton 16 proceedings is not yet definitely settled.[14] While it would appear to this court that the Supreme Court's discussion of in pari delicto in Perma Life Mufflers, as noted above, is equally applicable to the defense of unclean hands in a Clayton 16 action in the context in which that defense is here raised, it is not necessary for this court to reach that issue.

■■■ As appears from defendant's stated grounds for this defense, the alleged unconscionable acts on the part of the plaintiff do not arise out of anything involved in plaintiff's suit.

"[C]ourts of equity * * * apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation. They do not close their doors because of plaintiff's misconduct, whatever its character, that has no relation to anything involved in the suit, but only for such violations of conscience as in some measure affect

---

11. See Perma Life Mufflers, supra.

12. Laws of Hawaii, Chapter 205A, §§ 1, 2.

13. Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951).

14. Singer v. A. Hollander & Son, 202 F.2d 55 (3 Cir. 1953); Graham v. Triangle Publications, 233 F.Supp. 825 (E.D.Pa. 1964); and Louisiana Petroleum Retail Dealers v. Texas Co., 148 F.Supp. 334 (W.D.La.1956). Cases contra are: Hawaiian Tuna Packers v. International L. & W. Union, 72 F.Supp. 562 (D.Haw. 1947); and Magma Pictures Corp. v. Paramount Pictures Corp., 265 F.Supp. 144 (C.D.Cal.1967).

the equitable relations between the parties in respect of something brought before the court for adjudication." (Emphasis added.) [15]

Moreover, where, as here, a suit in equity concerns the public interests as well as the private interests of the litigants, the court is permitted to use its broadest discretion in the application of the maxim,[16] and the determination of when the maxim should be applied to bar this type of suit thus becomes of vital significance.

Plaintiff's claim is limited to GT&E's acquisitions. The facts pleaded by defendant's answer to support its defense of unclean hands do not relate "to misconduct in relation to the matter in litigation * * *."[17] Therefore, even if the court felt that the plaintiff was guilty of misconduct, since that misconduct does not affect the equitable relations between the parties in respect to the issue posed for adjudication by the court, the defense of unclean hands has no application here. If plaintiff is also a violator of the antitrust laws, defendant's remedy lies in recourse to a separate proceeding (as is set forth in defendant's counterclaim).

The same result is reached with regard to defendant's fourth affirmative defense under the Hawaii antitrust law for the reasons stated in re defendant's Third Affirmative Defense.

Plaintiff's Motion To Strike The Second, Third and Fourth Affirmative Defenses of Defendant General Telephone & Electronics Corporation is granted. Plaintiff will prepare the necessary Order.

15. Keystone Co. v. Excavator Co., 290 U.S. 240, 245, 54 S.Ct. 146, 147, 78 L.Ed. 293 (1933).

16. Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 815, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). Cf. also Graham v. Triangle Publications, supra note 14, 233 F.Supp. at 832, where Judge Higginbotham said:
"Although the Third Circuit has in the past honored the defense in a private suit for injunction instituted under the antitrust laws (Singer v. A. Hollander

* * * [supra]) it did not rely on the defense as the sole reason for dismissing the suit. If the unclean hands defense was the most persuasive argument for denying an injunction which should otherwise issue I would be inclined to hold under the facts and circumstances of this case that it would not be enough to thwart relief." (Footnote omitted.)

17. Hoehn v. Crews, 144 F.2d 665, 672 (10 Cir. 1944), cert. denied 323 U.S. 773, 65 S.Ct. 132, 89 L.Ed. 618 (1944).