UNITED ARTISTS RECORDS, INC. v. EASTERN TAPE CORPORA-
TION, G & G SALES, INC., SUPER HITS, INC., AND J. H. PETTUS

No. 7326SC362

(Filed 22 August 1973)

1. Unfair Competition — record piracy

Defendants' appropriation of recording performances owned by
plaintiff by reproducing them on magnetic tapes for sale in competition
with plaintiff's recordings constitutes unfair competition which sub-
jects defendant to injunctive restraint and liability for damages.

2. Unfair Competition— record piracy — effect of statute — recordings
in public domain

The appropriation of sound recordings by reproducing them on
magnetic tapes for sale in competition with the original recordings
is not justified either by G.S. 66-28 or by the fact that such recordings
are in the public domain.

3. Unfair Competition— record piracy — monopoly is no defense

Contention that plaintiff is asserting a monopoly in violation of
Article I, Section 34 of the N. C. Constitution, is no defense to an
action seeking compensatory damages and injunctive relief for the
unfair competition of pirating sound recordings owned by plaintiff.

4. Unfair Competition; Equity § 1— clean hands doctrine — same trans-
action

Any tying arrangement plaintiff may have had concerning the
production of its records or any refusal by plaintiff to sell to custom-
ers of defendants would not invoke the "clean hands" doctrine in an
action seeking injunctive relief and damages for the "pirating" of
plaintiff's recordings since such actions by plaintiff do not relate
to the methods of unfair competition employed by defendants which
are the subject of plaintiff's action.

5. Unfair Competition; Monopolies— failure to make individual per-
formances available in single record form — no anti-trust violation

Plaintiff's conduct in selecting musical performances for tran-
scription on long-playing albums and failing to make some individual
performances available to the public in single record form does not
constitute a tying arrangement in violation of the anti-trust laws
and is not contrary to public policy.

6. Unfair Competition; Monopolies— refusal to sell to certain dealers

Plaintiff's refusal to sell its recordings to dealers who also sell
the "pirated" tapes of defendants is not unlawful where plaintiff's

action is unilateral and not pursuant to any agreement with such dealers not to deal with the defendants.

**7. Corporations § 15; Unfair Competition— record piracy by corporation — liability of dominant shareholder**

> The individual defendant is subject to personal liability for damages resulting from the corporate defendants' "piracy" of plaintiff's recordings where the individual defendant is the dominant force which motivates, directs and controls the corporate defendants and the corporations are mere instruments set up and used by him to avoid personal liability.

APPEAL by defendants from *Snepp, Resident Superior Court Judge* of MECKLENBURG County, from judgment entered in Chambers 24 October 1972.

This is an action seeking injunctive relief and compensatory damages for alleged unfair competition. Plaintiff is a corporation engaged in the manufacture and sale of phonograph recordings. It enters into contracts with individuals and groups of performers under the terms of which it secures the exclusive right to manufacture, reproduce, and sell phonograph recordings embodying performances by these individuals and groups. Plaintiff charges defendants with appropriating performances transcribed on recordings manufactured by plaintiff, a practice known in the trade as "pirating." This "pirating" is accomplished by acquiring a copy of the original recording and, through the use of electronic recording equipment, transposing the performance to magnetic tapes which are then sold in competition with the products of the plaintiff.

Upon a previous appeal this conduct of the defendants was held to constitute unfair competition and a temporary restraining order prohibiting such conduct was affirmed. *Liberty/UA, Inc. [now United Artist Records, Inc.] v. Tape Corp.,* 11 N.C. App. 20, 180 S.E. 2d 414, *cert. denied,* 278 N.C. 702, 181 S.E. 2d 600.

Again, in a second appeal, this Court considered the legality of awarding costs, remedial damages and attorney fees to plaintiff's attorneys in a contempt proceeding arising out of violations by the defendants of the temporary restraining order. *Records v. Tape Corp.* and *Broadcasting System v. Tape Corp.,* 18 N.C. App. 183, 196 S.E. 2d 598.

After extended discovery proceedings, including lengthy depositions of the parties and supplementary interrogatories,

the plaintiff filed two motions: (1) for summary judgment under Rule 56, North Carolina Rules of Civil Procedure, upon the issue of liability and injunctive relief and (2) for a compulsory reference under Rule 53 (a) (2), North Carolina Rules of Civil Procedure, to determine the amount of damages to be awarded.

The individual defendants, J. H. Pettus, J. M. Pettus, Fred G. Dixon and Charles Dixon also moved for summary judgment.

Judge Frank W. Snepp filed a comprehensive memorandum opinion and order on 31 July 1972 in which he concluded that plaintiff was entitled to entry of summary judgment against the corporate defendants and against the individual defendant, J. H. Pettus, as to all issues except damages and that a reference should be ordered under Rule 53 (a) (2) a to determine the issue of damages. The motion for summary judgment of the individual defendants, except J. H. Pettus, was granted, and the actions against these individual defendants were dismissed. Summary judgment was entered on 24 October 1972 in favor of the plaintiff against Eastern Tape Corporation, G & G Sales, Inc., S-H, Inc., and J. H. Pettus, individualy, which:

1. Granted permanent injunction prohibiting the unfair competitive practices described in the complaint.

2. Awarded judgment for such monetary recovery as shall be found to be due as provided by law.

3. Ordered a reference to determine the amount of monetary recovery.

4. Dismissed the case as to all individual defendants except J. H. Pettus.

From this judgment, the corporate defendants and the individual defendant, J. H. Pettus, have appealed.

*Smith, Moore, Smith, Schell & Hunter, by Jack W. Floyd and Harold N. Bynum; and Cecil M. Curtis, for plaintiff appellees.*

*Mraz, Aycock, Casstevens & Davis, by Gary A. Davis; Levine, Goodman & Murchison, by Alton G. Murchison III; and Richards, Shefte & Pinckney, by Francis M. Pinckney, for defendant appellants.*

Records v. Tape Corp.

BALEY, Judge.

The defendants raise three major questions upon this appeal. First, they contend there are genuine issues as to material facts preventing summary judgment upon plaintiff's claim of unfair competition. Second, they assert that the affirmative defenses offered in their answer constitute valid legal defenses to plaintiff's claim, or, at least, present issues of material fact. Third, they urge that there is no personal liability of the individual defendant, J. H. Pettus. The trial court resolved all these questions in favor of the plaintiff, and we are in accord with this judgment.

The history of this case reveals that the defendants have consistently admitted the conduct about which plaintiff complains in its complaint. In the previous appeals to this Court, defendants conceded, through various affidavits and briefs, that they were appropriating record performances owned by plaintiff and reproducing them on magnetic tapes for sale in competition with the original recordings. Defendants have heretofore taken the position that such conduct did not amount to unfair competition and, therefore, did not constitute any basis for injunctive relief or compensatory damages.

Defendants now contend that despite these admissions concerning their general business activities, they have not admitted the appropriation of any particular performance embodied in phonographic recordings which are owned, produced, and sold by the plaintiff.

The complaint lists particular performances owned by plaintiff which have been pirated and appropriated by defendants. Affidavits of defense counsel for the injunction hearing show search of copyright records and payment of royalties upon specific musical compositions listed by plaintiff and appropriated by defendants. After the preliminary injunction was obtained, affidavits of employees of the defendants indicate that the prohibited recording performances owned by plaintiff were eliminated and replaced. It was determined that defendants were violating the injunction and they were found guilty of contempt. The material facts are not in dispute. It is clear that defendants were engaging in pirating activity which involved plaintiff's property. The exact extent of such activity is for later determination, but the issue of liability is a proper issue to be determined by summary judgment.

Indeed, in response to interrogatories, plaintiff has furnished information concerning the particular recordings involved, and the parties have entered a stipulation which provides in part:

"COUNSEL FOR THE PLAINTIFFS AND COUNSEL FOR THE DEFENDANTS hereby stipulate and agree to the following:

1. If it be finally determined in these actions that the defendants are engaged in business activities as complained of by the plaintiffs in the present actions, that such business activities constitute unfair competition with the plaintiffs, and that the plaintiffs' claim and cause of action is not barred by any of the defenses asserted herein by the defendants, the defendants stipulate that the plaintiffs have suffered legal injury. Plaintiffs at the trial or hearing of these cases shall not attempt to prove the amount of profits, if any, lost by them."

This stipulation was obviously designed to eliminate a lengthy accounting and reduce the issue to one of liability, leaving the amount of damages, if any, for later determination.

[1] The decision in *Liberty, supra,* has settled the question of liability. Defendants have utilized the skill and resources of plaintiff to enrich themselves unjustly at plaintiff's expense. Their appropriating of the performances recorded by plaintiff and selling them in competition with plaintiff constitutes unfair competition in North Carolina. Such unfair competition entitles plaintiff to recover damages and it is subject to injunctive restraint.

Defendants have attempted to assert the following affirmative defenses in bar of plaintiff's claim:

1. Common law rights attaching to phonograph records or electrical transcriptions have been expressly abrogated or repealed by N.C. G.S. 66-28.

2. Musical performances appropriated by defendants are in the public domain.

3. Plaintiff is asserting a monopoly in violation of Article I, Section 34 of the Constitution of North Carolina.

4. Plaintiff ties and combines musical performances together in albums and refuses to make individual musical performances available to the public in single record form.

5. Plaintiff refuses to deal with customers of the defendants thereby creating a trade boycott.

[2]   The first two affirmative defenses were decided adversely to the defendants in *Liberty, supra,* when the conduct of defendants was determined to be unfair competition. Since the decision in *Liberty,* modern electronic equipment continues to become more sophisticated and record piracy more widespread. The United States Congress has now extended copyright. protection to sound recordings which were copyrighted after February 1972 and before 1 January 1975. 17 U.S.C. §§ 1, 5, 19, 20, 26, 101 (Supp. I, 1971), *amending* 17 U.S.C. §§ 1, 5, 19, 20, 26, 101 (1970) (Act of Oct. 15, 1971, Pub. L. No. 92-140, §§ 1-3, 85 Stat. 391). The United States Supreme Court distinguished *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed. 2d 661 (1964), and *Compco Corp. v. Day-Brite Lighting,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed. 2d 669 (1964), and approved state regulation of sound recordings prior to 15 February 1972 when it held a California statute which bars unauthorized copying of sound recordings to be a valid exercise of the powers of the state. *Goldstein v. California,* 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed. 2d 163 (1973). *See also Columbia Broadcasting System, Inc. v. Custom Recording Co.,* 258 S.C. 465, 189 S.E. 2d 305 (1972), where *Liberty* was cited with approval. It seems clear that in North Carolina the conduct and techniques employed by defendants to copy and appropriate sound recordings are not justified either under G.S. 66-28 or the fact that such recordings are in the public domain.

[3]   The defense that plaintiff is asserting a monopoly in violation of Article I, Section 34, of the Constitution of North Carolina has no merit. Plaintiff is simply trying to prevent defendants from stealing its property. Defendants are not restricted from securing their own performers, recording these performances, and selling their own records or tapes in fair competition with plaintiff. Even if plaintiff's conduct in protecting its property should be considered a monopolistic practice, it is not a defense to this action where defendants' conduct has been determined to be unfair competition. *See M. Witmark & Sons v. Pastime Amusement Co.,* 298 F. 470, 480 (E.D.S.C.), *aff'd,* 2 F. 2d 1020 (4th Cir. 1924).

The last two defenses urged by defendants seek to invoke the well established equitable maxim "he who asks equity must do equity." There is, however, a reasonable limitation to the

application of this "clean hands" doctrine, recognized in *Cuthbertson v. Morgan,* 149 N.C. 72, 62 S.E. 744, which holds that any wrong invoked must have arisen out of the transaction before the court, and not some collateral matter.

"The court will not, arbitrarily, impose conditions or require him to pay for the relief by doing, or abstaining from doing, something demanded by the other party against whom the relief is granted, separate and distinct from the transaction involved in the litigation out of which the demand for relief grew." *Id.* at 78, 62 S.E. at 747.

[4] In this case any tying arrangement which plaintiff may have had concerning the production of its records or any refusal by plaintiff to sell to customers of the defendants would not relate to the methods of unfair competition employed by the defendants which are the subject of this action. Defendants cannot avoid the consequences of their own unlawful conduct on the ground that plaintiff has committed some unlawful acts in collateral matters. *Kiefer-Stewart Co. v. Seagram & Sons,* 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951) ; *International Tel. & Tel. Corp. v. General Tel. & Elec. Corp.,* 296 F. Supp. 920 (D. Hawaii 1969).

"A tying arrangement is an agreement by a party to sell one product but only on the condition that the buyer also purchase a different (or tied) product, or at least agree that he will not purchase that product from another supplier. A seller's offering two items as a unit at a single price is not a tying arrangement if the buyer is free to take either product by itself." 54 Am. Jur. 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices, § 59, p. 701.

[5] No case has been cited and our research has disclosed none which has held that the selection of musical performances for transcription on long-playing albums constitutes any tying arrangement which would so restrict competition as to fall within the structures of the anti-trust laws. The facts in this record with respect to the alleged "tying" or "combining" of musical performances by plaintiff are not disputed. Usually plaintiff will include in an album a series of performances by the same identifiable individual or group. Frequently, only one or two of these performances strike the fancy of the public and are issued as individual records. They remain on the market as long as there is any significant consumer demand. Single per-

formances of proven popularity if combined in albums continue to be issued and distributed as singles as long as sales justify. Upon the basis of the undisputed facts, the conduct of plaintiff in marketing its products has not been shown to be improper or contrary to public policy.

[6]   With respect to the refusal of the plaintiff to sell its recordings to dealers who also sell the "pirated" tapes of the defendants, the evidence shows that this action on the part of plaintiff was unilateral and not pursuant to any agreement with such dealers not to deal with the defendants. In the absence of conspiracy or monopoly, one may deal with whom he pleases. In *McNeill v. Hall,* 220 N.C. 73, 74, 16 S.E. 2d 456, 457, the court said:

> "The determination of the defendants to decline to buy from the salesmen if they continued to sell to the plaintiffs was not an unlawful act. It was simply the exercise of the right they had to buy from or to refrain from buying from whomsoever they pleased."

In *McElhenney Co. v. Western Auto Supply Co.,* 269 F. 2d 332, 337 (4th Cir. 1959), Chief Judge Sobeloff speaking for the court clearly states the rule:

> "Generally speaking, the right of customer selection is sanctioned by both statute and case law. Absent conspiracy or monopolization, a seller engaged in a private business may normally refuse to deal with a buyer for any reason or with no reason whatever. . . .
>
> *       *       *
>
> Neither in terms nor inferentially does the statute [Clayton Act] prohibit a, unilateral refusal to sell."

Any refusal to deal which is intended to stiffle legitimate competition is a far cry from a refusal to deal to prevent others from competing unfairly.

The affirmative defenses asserted by the defendants do not raise any genuine issue of material fact and cannot be sustained in law.

There yet remains the question of personal liability of the individual defendant, J. H. Pettus.

It is the general rule that an officer or agent of a corporation is liable individually for the consequences of torts committed by him on behalf of the corporation.

"Broadly speaking a director, officer, or agent of a corporation is not, merely by virtue of his office, liable for the torts of the corporation or of other directors, officers, or agents.

He is, however, as in the case of torts committed by agents generally . . . liable in damages for injuries suffered by third persons because of his own torts, regardless of whether he acted on his own account or on behalf of the corporation and regardless of whether or not the corporation is also liable. He cannot escape liability on the ground that in committing the tort he acted as a director, officer, or agent of the corporation, or on the ground that the corporation may also be liable." 19 C.J.S., Corporations, § 845, pp. 271-72.

See also Mills v. Mills, 230 N.C. 286, 52 S.E. 2d 915; Minnis v. Sharpe, 198 N.C. 364, 151 S.E. 735; Cone v. Fruit Growers' Association, 171 N.C. 530, 88 S.E. 860.

Robinson, N. C. Corporation Law and Practice, § 102 provides:

"As a general rule, an officer or other agent of a corporation who commits a tort is individually liable therefor even though he was acting on behalf of the corporation."

In a trademark infringement case against a corporation and its individual officers who were actively aiding in carrying on unlawful business practices, the court recognized that the individual defendants could claim no immunity but could be sued either separately or jointly. Tobacco Co. v. Tobacco Co., 144 N.C. 352, 57 S.E. 5.

The application of the general rule of personal liability for torts which an individual officer has committed on behalf of a corporation is invariably approved and extended when an officer is the dominant shareholder and has clearly used the corporation as a cloak or cover for his illegal conduct.

In Henderson v. Finance Co., 273 N.C. 253, 260-61, 160 S.E. 2d 39, 44-45, the court stated:

"However, when, as here, the corporation is so operated that it is a mere instrumentality or *alter ego* of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State, the corporate entity will be disregarded and the corporation and the shareholder treated as one and the same person, it being immaterial whether the sole or dominant shareholder is an individual or another corporation. (Citations omitted.) As Sanborn, J., said in *United States v. Milwaukee Refrigerator Transit Co.,* 142 F. 247, 255, '[W]hen the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons.' "

Again in *Utilities Comm. v. Morgan, Attorney General,* 277 N.C. 255, 272, 177 S.E. 2d 405, 416, there is this succinct statement:

"It is well established that the doctrine of the corporate entity may not be used as a means for defeating the public interest and circumventing public policy."

[7] In the present case we do not have a corporate officer from a corporation in which the stock is widely held who might be deterred from continuing his unlawful conduct by a judgment against the corporation. The record shows two defendant corporations in which the individual defendant owned all the stock now in the process of liquidation with the assets of these corporations being transferred to other corporate entities or individuals some of whom were employed by the defendant corporations. Part of the equipment has been moved by one of the former employees to a building, owned by the mother of J. H. Pettus, which is used for storage by G & G Sales and by an inactive corporation, Wholesale Salvage, of which J. H. Pettus is president. It is undisputed that J. H. Pettus, who was knowledgeable in the recording business, participated in the organization of Eastern Tape Corporation and G & G Sales, Inc., for the express purpose of conducting the pirating activity which has been determined to be unfair competition. He was president and general manager of Eastern Tape and vice president of G & G Sales and the sole shareholder in both corporations. He admitted that there had been no regular meetings of either corporation and that all business was handled from the same office. After the issuance of the preliminary injunction,

the prohibited activities apparently continued at the same location with the same telephones and personnel and with relatives of J. H. Pettus employed using new corporations, S-H, Inc. and Sound Duplicator Service, Inc. The individual defendant maintained the same office and was available for direction and guidance. He admits in his deposition:

"They all know that I duplicate other peoples' music. I have told them that I thought I was in the right about this . . . .

At no time have I ever hidden the fact that I was manufacturing or selling these tapes."

From the uncontroverted facts it is evident that J. H. Pettus is the dominant force which motivates, directs and controls the corporate defendants. The corporations are mere instruments set up and used by him to avoid personal liability for the wrongful conduct in which he was engaged. To permit him to escape liability under the facts in this case by wrapping around him the cloak of corporate immunity would thwart the ends of justice and is not in the public interest.

The order of the trial court awarding summary judgment against the corporate defendants and the individual defendant, J. H. Pettus, is affirmed.

Affirmed.

Judges CAMPBELL and BRITT concur.