**AMERICAN CRAFT HOSIERY CORPORATION, Plaintiff,**

v.

**DAMASCUS HOSIERY MILLS, INC., Defendant.**

**No. SH–C–82–183.**

United States District Court,
W.D. North Carolina,
Shelby Division.

April 13, 1983.

Mitchell, Teele, Blackwell & Mitchell by W. Harold Mitchell, Valdese, N.C., for plaintiff.

Simpson, Aycock, Beyer & Simpson, P.A. by Dan R. Simpson, Morganton, N.C., for defendant.

## MEMORANDUM OF DECISION

WOODROW WILSON JONES, Chief Judge.

THIS MATTER is before the Court upon the Defendant's motion for judgment notwithstanding the verdict under Rule 50(b), Federal Rules of Civil Procedure and in the alternative to set aside the verdict and grant a new trial pursuant to Rule 59, Federal Rules of Civil Procedure on the grounds that the verdict was not unanimous, was against the greater weight of the evidence and for errors of law made during the trial.

The Plaintiff opposes the Defendant's motion and has moved for treble damages and attorney's fees under North Carolina General Statutes 75–16 and 16.1.

The Court heard oral arguments of counsel on April 6, 1983 in Rutherfordton, North Carolina and after full consideration of the arguments, briefs and a review of the file and evidence at the trial now enters its findings and conclusions.

The Plaintiff, American Craft Hosiery Corporation, a North Carolina corporation brought this diversity action against the Defendant, Damascus Hosiery Mills, Inc., a Virginia corporation on May 10, 1982 in the Superior Court of Burke County, North Carolina alleging tortious interference with a contract and a violation of North Carolina General Statutes 75–1.1. The action was removed to federal court by the Defendant and was tried by the Court and a jury at the February 1983 term in Rutherfordton, North Carolina. The jury answered the issues submitted to it as follows:

1. Did the plaintiff American Craft Hosiery Corporation enter into a contract with Setzer Hosiery Company on May 8, 1978, for Setzer Hosiery Company to knit up to 1.09 million pairs of cushion sole socks for American Craft Hosiery Corporation, as alleged by the plaintiff?

ANSWER: Yes

2. Did the defendant Damascus Hosiery Mills, Inc. do one or more of the following:

(a) Tell Setzer Hosiery Company that if it knitted and sold socks to American Craft Hosiery, Inc., that Damascus would put Setzer out of business, as alleged by the plaintiff?

ANSWER: Yes

(b) Threaten to destroy Setzer Hosiery Company's business if Setzer completed its contract with American Craft Hosiery, as alleged by the plaintiff?

ANSWER: Yes

(c) State that it would remove its machines from the Setzer Hosiery Company's plant, as alleged by the plaintiff?

ANSWER: Yes

3. Were the defendant Damascus Hosiery Mills' acts in commerce, or did they affect commerce, as alleged by the plaintiff?

ANSWER: Yes

4. Was the plaintiff American Craft Hosiery Corporation injured as proximate result of the conduct of the defendant Damascus Hosiery Mills, Inc., as alleged by the plaintiff?

ANSWER: Yes

5. What amount of damages, if any, is the plaintiff entitled to recover of the defendant?

ANSWER: $150,000.00

■ After the Foreman reported the verdict of the jury the Defendant demanded a poll of the jury. During the poll the Court asked each juror whether the verdict announced by the Foreman was his or her personal and individual verdict. The third juror replied, "Your Honor, I had a lot of trouble with it, but I finally voted." The Court then asked, "And it is your verdict?", and the juror replied, "I really had no choice. I was outnumbered. Yes, Sir, it is." The Court thereupon accepted the verdict and ordered it recorded by the Clerk.

The Plaintiff contends that the verdict was not the unanimous verdict of the jury and cites and relies upon the case of *Owens v. Southern Railway Co.*, 123 N.C. 183, 31 S.E. 383 (1898). In *Owens* the plaintiff offered evidence tending to prove that she was a passenger, on defendant's train, and that while alighting at High Point, the train gave a sudden jerk, and she fell and was injured. The defendant alleged contributory negligence and offered evidence tending to prove it. The jury answered "No" to the issue of contributory negligence and the defendant demanded a poll of the jury. Upon the poll one juror answered, "I think she was to blame in part." The juror was then asked, "Did you not consent in the jury room that the answer to this issue should be 'No'" and he replied, "I did." The verdict was then received and recorded. The Supreme Court granted a new trial holding that:

It was error to permit the verdict to be received after the juror's dissent, in part at least, without ascertaining whether notwithstanding he adhered still to the assent given in the jury room .... For the reception of the verdict under these circumstances over the objections of the defendant, there must be a new trial.

For other North Carolina cases on the polling of the jury see *Smith v. Paul,* 133 N.C. 66, 45 S.E. 348 (1903); *In Re Sugg,* 194 N.C. 638, 140 S.E. 604 (1927); and *State v. Asbury,* 291 N.C. 164, 229 S.E.2d 175 (1976).

The Court concludes that the verdict was the unanimous decision of the twelve jurors. After advising the Court of her difficulty in agreeing to the verdict she stated that she had voted for the verdict and that "yes" the verdict was her personal and individual verdict. The Court finds and concludes that the verdict announced was the unanimous verdict of the jury and this claim is without merit.

■ The Defendant's claim that it was error for the Court to refuse to submit to the jury its proposed issue No. 20 as to whether Setzer Hosiery Company had the ability to perform the contract the Plaintiff claimed to have with Setzer is without merit. The Court's instructions under the contract and proximate cause issues were sufficient to cover the Plaintiff's contention that Setzer could not have performed the alleged contract. By its answers to the contract and proximate cause issues the jury determined that Setzer was able to perform the alleged contract.

■ It was not error for the Court to permit the witness, Donna Shook Williams to testify that she was familiar with witness Setzer's reputation for truthfulness in the community and that his reputation was bad. On cross examination she admitted that she was mostly referring to his reputation among his employees and that she was an employee herself. Rule 608(a), Rules of Evidence.

■ The Defendant assigns as error the admission into evidence of certain statements of Blake Atwood, who at the time of the alleged occurrence was Vice-President of Damascus and was in charge of the submission of bids as well as other matters pertaining to Government contracts; the statements made by Setzer and Atwood's

conviction of certain bid rigging charges involving his duties for Damascus. The statements of Atwood are admissible under admissions of parties and Setzer's statements immediately after the visit of Atwood and another officer of Damascus informing him that he could not proceed with the contract with Plaintiff are admissible under Rule 803(2) Excited Utterances. In addition, the Plaintiff alleged a conspiracy between Setzer and Damascus to prevent American from complying with the terms of its bid for the Government contract. Atwood's prior convictions were admissible under Rule 803(22), Federal Rules of Evidence.

The Court concludes that the Defendant's motion for a new trial should be denied.

The Plaintiff's motion to treble the damages under G.S. 75–16 and for attorney's fee under G.S. 75–16.1 should also be denied.

■ General Statutes 75–16. Civil action by person injured; treble damages.

If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the, provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict.

General Statutes 75–1.1 makes unlawful unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce. General Statutes 75–16 provides that a person injured by such acts is entitled to treble damages. Since the statute is comparatively new the North Carolina Court has had only a limited opportunity to interpret it and to define its terms. In the case of *State ex rel. Edmisten v. J.C. Penney Co.*, 292 N.C. 311, 233 S.E.2d 895 (1977), the Supreme Court held that debt collection activities were not within the purview of G.S. 75–1.1, saying that the unfair and deceptive acts and practices forbidden by the statute are those involved in the bargain, sale, barter, exchange or traffic of goods. Later the Court seemed to broaden its interpretation of the meaning of "commerce" as used in the statute and held that a contract between a mortgage broker and a borrower for the exclusive right to place permanent mortgage financing was in commerce as used in the statute. *Johnson v. Phoenix Mutual Life Ins. Co.*, 300 N.C. 247, 266 S.E.2d 610 (1980). In *Marshall v. Miller*, 302 N.C. 539, 276 S.E.2d 397 (1981) the Court referred to the statute as an act for the protection of consumers and that G.S. 75–16 was intended to create an effective private remedy for aggrieved consumers.

The North Carolina courts have found various acts to be unfair methods of competition or unfair acts within the meaning of the statute, such as, misrepresentations by a mobile home park operator, *Marshall v. Miller, supra;* intentional torts of trespass and conversion by landlord, *Love v. Pressley*, 34 N.C.App. 503, 239 S.E.2d 574 (1977), *cert. den.*, 294 N.C. 441, 241 S.E.2d 843 (1978); conspiracy to prevent performance of contract, *Pedwell v. First Union National Bank and Cameron Brown Co.*, 51 N.C.App. 236, 275 S.E.2d 565 (1981); and false statements to potential insurance purchaser, *Ellis v. Smith Broadhurst, Inc.*, 48 N.C.App. 180, 268 S.E.2d 271 (1980). Two cases construing the North Carolina law have held that intentional breach of contract is not an unfair method of competition nor an unfair act. *C.F. Industries v. Transcontinental Gas Pipe Line*, 448 F.Supp. 475 (W.D.N.C.1978) and *United Roasters, Inc. v. Colgate-Palmolive Co.*, 649 F.2d 985 (4th Cir.1981), *cert. den.*, 454 U.S. 1054, 102 S.Ct. 599, 70 L.Ed.2d 590. In *United Roasters*, the jury found an intentional breach of three contracts. The district court held that such conduct was not an unfair or deceptive act or practice. The Court of Appeals for the Fourth Circuit affirmed. Judge Hayns-

worth writing for the Court said of the statute:

It is clear that the statute encompasses such things as misrepresentation and a wide variety of shady practices sometimes associated with the marketing of consumer goods and services. Whatever the limit of their reach, however, the words must mean something more than an ordinary contract breach.

In a sense, unfairness inheres in every breach of contract when one of the contracting parties is denied the advantage for which he has contracted, but this is why remedial damages are awarded on contract claims. If such an award is to be trebled, the North Carolina legislature must have intended that substantial aggravating circumstances be present. The statute outlaws unfair competition and the unfair acts and practices made unlawful include acts or practices not aptly described as deceptive. The North Carolina Supreme Court in *J.C. Penney*, *in dicta*, listed a number of acts or practices thought to be representative of those things proscribed by the statute. They are actually deceptive or approach deception. In each instance, the deception or unfairness was present at the time of contract formation.

The Court concluded:

In an ordinary breach of contract claim such as this, in which the economic losses are compensable under traditional contract principles, the reason for the emerging principle is simply not present, for United Roasters' economic losses are compensable under the traditional principles.

In *C.F. Industries*, Judge McMillan held that an intentional breach of a valid contract to furnish natural gas was not a violation of G.S. 75–1.1.

Of course, the Plaintiff contends that we have much more here than a breach of contract. That the tortious interference with a contract sounds in tort rather than contract, and contains aggravating circumstances, such as coercion, threats and the elimination of competition.

It is true the Plaintiff alleged and the jury found that the Defendant interfered with the contract of the Plaintiff and Setzer Hosiery Company. The jury further found that such interference was the proximate cause of Plaintiff's loss of profits and awarded the Plaintiff an amount almost equal to the prayer for relief. The question the Court must determine is whether the facts of this case are sufficient to constitute a violation of G.S. 75–1.1 as a matter of law, thereby triggering the operation of G.S. 75–16 resulting in the trebling of the award of the jury.

The facts of the case at bar reveal that the Plaintiff, a newly formed business decided to bid on a government contract for 1,922,000 pairs of olive green cushion sole army socks. The contract was to be let on May 11, 1978, in Philadelphia. In order to bid on the contract the Plaintiff needed to find another company to do the knitting of the greige goods, i.e., undyed knitted socks. The president of Plaintiff company contacted Claude Setzer, President of Setzer Hosiery Company, Hickory, North Carolina, and as the jury determined they entered into an oral agreement whereby Setzer would knit the socks for American. As a result of the agreement American bid on 1,090,000 pairs of socks and was low bidder on 980,000 pairs. The Defendant company, Damascus bid on the same socks but was successful on only 24,360 pairs of socks. The evidence showed that Damascus had been Setzer's sole customer and actually owned one half or more of the special type of knitting machines used by Setzer to knit the socks. When the bids were opened and made public in Philadelphia including the names of the subcontractors, Blake Atwood, Vice-President of Damascus, stated that Setzer would not knit for anyone other than Damascus and if he did he would put him out of business. The next morning the President of American received a call from Mr. Setzer stating that the bid got him in serious trouble with his main customer, Damascus, and that he was told that if he knitted the socks for American Damascus would put him out of business. Setzer

then refused to knit for American. After making efforts to obtain the knitting somewhere else and failed American was forced to release its bid. Thereafter Damascus was the successful bidder on 837,760 pairs of such socks.

Without a doubt American has a cause of action against Setzer for damages for breach of the contract. It is also well established in North Carolina that American has a cause of action for damages against Damascus for knowingly and intentionally and without legal justification causing or inducing Setzer to breach its contract with American and causing damages to American. *Overall Corp. v. Linen Supply, Inc.*, 8 N.C.App. 528, 174 S.E.2d 659 (1970); *Bryant v. Barber*, 237 N.C. 480, 75 S.E.2d 410 (1953); *Eller v. Arnold*, 230 N.C. 418, 53 S.E.2d 266 (1949).

Damascus contends that it did nothing more than advise Setzer that its machines could not be used to knit socks for a competitor and that if they were so used they would be removed immediately and that it had every right to make such demand on Setzer. That such conduct is permitted and it does not constitute wrongful interference with a contract or violate G.S. 75–1.1.

However, the jury found that the Defendant did more than just threaten to remove its machines and indeed did interfere with the contract resulting in damages to the Plaintiff. From a reading of all the cases on G.S. 75–1.1, it appears that a tortious interference with a contract could constitute an unfair method of competition or unfair acts within the meaning of the statute. However, the Court finds and concludes that the facts of this case do not constitute such unfair competition, and the unfair acts and practices made unlawful by the Act. *United Roasters, supra.* The Plaintiff can be compensated under traditional contract principles and the jury awarded ample damages to cover any loss sustained. The motion for treble damages will be denied.

■ The Plaintiff also demands attorney fees under G.S. 75–16.1. The statute provides that the Court may, in its discretion, allow a reasonable attorney fee to the prevailing party to be taxed as a part of the costs. But the statute further provides that in order to allow such fees the Court must find not only that the losing party willfully engaged in the act or practice, and there was an unwarranted refusal by such party to pay the claim which constituted the basis of such suit.

Since the Court has determined as a matter of law as directed under *Hardy v. Toler*, 288 N.C. 303, 218 S.E.2d 342 (1975) that the Defendant did not violate G.S. 75–1.1 it follows that no attorney fee could be allowed under G.S. 75–16.1. But assuming arguendo that the wrongful interference with a contract as found by the jury is sufficient to constitute a violation of the statute there has been no showing that the Defendant made an unwarranted refusal to pay the claim. During the trial the Court asked the attorneys if any good faith effort to settle the case had been made. They reported that efforts had been made but the case could not be settled. The attorneys did advise the Court of the Plaintiff's demand and the Defendant's offer. Later they advised that the Defendant's offer had been increased but the case could not be settled. The Court cannot find that there was any unwarranted refusal of the Defendant to pay the claim or demand of the Plaintiff. It therefore follows that the Plaintiff is not entitled to attorney fees, and the motion will be denied.

■ The Defendant contends that the damage award is excessive and is contrary to the greater weight of the evidence. The Plaintiff's evidence on this issue consisted of the testimony of their accountant, Jack Weir, offered as an expert witness, and the Government Audit Report on Damascus concerning its profits on government socks contracts. The Defendant contends that Weir's testimony was nothing more than a guess and the audit report was not admissible. It is true the Plaintiff company was a young business at the time and had not performed a contract of this sort but based upon the records and performance of the

company the accountant gave his opinion as to the profit the company would have made under the contract. His figure of $186,000.00 plus was smaller than the audit report of Defendant's profits from similar sock contracts with the Government. The audit report was admitted under Rule 803(8) as it stated a conclusion which was helpful and the Court deemed it to be reliable. It was relevant to the issue as to what reasonable profit could be expected from the contract. The Plaintiff was the successful bidder but the Defendant wound up with most of the contract. It seems that Defendant's profit record on similar contracts for government socks would be reliable evidence as to what damages the Plaintiff suffered.

The jury has passed upon the conflicting evidence and the Court feels that the verdict should not be disturbed.

The motion of the Defendant for a judgment notwithstanding the verdict or in the alternative to set the verdict aside and grant a new trial is denied. The Plaintiff's motions for treble damages and attorney fees are denied.

A judgment on the verdict will be entered simultaneously herewith.