LINDA T. McDONALD D/B/A COUNTRY MEMORIES AND THE LINDA Mc COM-
PANY v. DARRELL SCARBORO, AMTEK, INC. D/B/A AMERICAN CRAFTS
AND W. GARDNER McCRARY

No. 8726SC952

(Filed 2 August 1988)

1. **Unfair Competition § 1— tortious interference with business or contractual re-
   lations—unfair trade practice**

   The trial court did not err by finding as a matter of law that defendants
   had violated N.C.G.S. § 75-1.1(a) by their tortious interference with the
   business relations of plaintiff where plaintiff had entered into an agreement
   with defendant Scarboro under which Scarboro was to create new and original
   sculptures exclusively for plaintiff which plaintiff would manufacture and sell;
   plaintiff was not successful at having the sculptures reproduced and defendant
   Scarboro received no payment for first quarter 1985 sales; defendant McCrary
   entered into an agreement with Scarboro for Scarboro to become an employee
   of Amtek and produce sculptures for that company; Scarboro approached
   plaintiff and informed her that he wanted out of the contract; plaintiff stated
   her willingness to work with the unnamed men who had approached plaintiff,
   allowing them to make the reproductions while she sold Scarboro's work; no
   agreement was reached and Scarboro informed plaintiff that he no longer con-
   sidered their contract valid; and Scarboro went to work for Amtek and con-
   tinued to work until he was enjoined from doing so.

2. **Contracts § 34— wrongful inducement to breach contract and interference with
   contract—evidence sufficient**

   The trial court did not err by denying defendant's Rule 50 motion to
   dismiss plaintiff's claims of wrongful inducement and interference with con-
   tract where there was no evidence of oppression or fraud, and the evidence
   viewed in the light most favorable to plaintiff reveals that plaintiff understood
   that the prior contract had been terminated and had no knowledge that her
   agreement with defendant may have been inconsistent with or involved a
   breach of the prior contract.

3. **Attorneys at Law § 9— indemnification of attorney's fees—evidence of con-
   tract sufficient—award of fees improper**

   The trial court did not err in a breach of contract action by denying de-
   fendant McCrary's Rule 50 motion on the issue of defendant's indemnification
   of defendant Scarboro's attorney's fees but did err in its award of $12,090 in
   attorney's fees. While there was sufficient evidence to establish the existence
   of an implied in fact contract, the jury should have been allowed to determine
   whether defendant breached the contract and the amount of damages.

**4. Attorneys at Law § 7.5— unfair trade practice—award of attorney's fees to plaintiff—amount proper**

The trial court did not abuse its discretion in awarding plaintiff attorney's fees in the amount of $27,686.10 in an unfair trade practice action where the court made appropriate findings of fact. N.C.G.S. § 75-16.1.

Chief Judge HEDRICK concurs in the result.

APPEAL by defendant from *Burroughs, Robert M., Judge.* Judgment entered 6 March 1987. Heard in the Court of Appeals 7 March 1988.

*Petree Stockton & Robinson, by David B. Hamilton and J. Neil Robinson, for plaintiff-appellee.*

*Kenneth P. Andresen for defendant-appellant, W. Gardner McCrary.*

*No brief filed by defendants Darrell Scarboro or Amtek, Inc., d/b/a American Crafts.*

JOHNSON, Judge.

This is a civil action brought by plaintiff against defendants for breach of contract, tortious interference with contract and business relations, common law unfair competition, violation of G.S. 75-1.1, civil conspiracy and conversion.

The plaintiff, Linda McDonald, operates two sole proprietorships which manufacture, market, sell and distribute a variety of folk art. Plaintiff sells not only the products she manufactures, but also sells on a commission basis the products of other folk artists.

Defendant, Darrell Scarboro, is an artist, who is able to create a variety of figurines or sculptures in folk art. In the fall of 1984, Scarboro called plaintiff and requested that she agree to sell his folk art, which consisted of the figurines. On 6 December 1984, Scarboro met plaintiff at his residence and he showed her several pieces of his work. Plaintiff indicated to defendant that she was in the business of marketing folk art and that she could sell reproductions of his work, although she didn't manufacture it. Defendant informed plaintiff that he had a contract with Robert Stovall to produce his work. However, he informed her that he had terminated the contract with Stovall on 13 September 1984. According to the terms of the contract, the scheduled termination date was to be on 2 January 1985. Also, plaintiff and defendant dis-

cussed problems that Stovall encountered in having molds made from which satisfactory reproductions of Scarboro's work could be produced.

They also discussed the number of pieces defendant would be required to produce under the proposed agreement. Plaintiff agreed to pay for all manufacturing, to pay defendant a standard commission of 15% on each sculpture, and to lend defendant $1,000.00, provided he repaid the loan within one year. After having several discussions, the parties reduced the agreement to writing.

On 26 December 1984, McDonald and Scarboro executed a contract for a term of five years. Pursuant to the contract, Scarboro assigned to plaintiff "all of the right, title and interest, including all copyrights" in the sculptures created. The contract also required defendant (Scarboro) to "create new and original sculptures exclusively" for plaintiff. Plaintiff agreed to pay Scarboro 15% of the net sales price of all reproductions of Scarboro's sculptures she sold. Also, plaintiff was required to make quarterly accountings to Scarboro and to submit payment for his portion of the "net sales" of the previous quarter.

Pursuant to contract specifications, Scarboro provided eight sculptures to plaintiff during the first calendar quarter. Plaintiff attempted to have the sculptures reproduced at a ceramics shop which Scarboro recommended, but was unsuccessful. The ceramics shop completed the molds unsatisfactorily, and as a result plaintiff was unable to fill the orders she received at an Atlanta trade show totalling $15,000.00. Scarboro therefore received no payment for first quarter 1985 sales.

On 31 March 1985, defendant W. Gardner McCrary, owner and president of defendant Amtek, Inc. d/b/a American Crafts, saw some of Scarboro's work at a trade show in Charlotte, North Carolina. Alta Paxton was displaying the sculptures and informed him that Scarboro was the artist, and that Stovall reproduced them and was the sales agent. Later that day, McCrary met Scarboro at the trade show. McCrary met Scarboro again later that evening at Scarboro's residence where they discussed the possibility of his reproducing Scarboro's work.

In April of 1985, McCrary and Scarboro met at McCrary's place of business. Scarboro informed McCrary that he had signed

a contract with McDonald and showed him a copy of the contract. McCrary told Scarboro that he would take the contract to the company lawyer to determine whether Scarboro was bound by the agreement. To prevent any bias, they received a second opinion from an outside lawyer concerning the contract's validity. As a result of those two opinions, McCrary and Scarboro further discussed an employment arrangement whereby Scarboro would become an employee of Amtek, would work at Amtek for $245.00 per week with related benefits, would produce sculptures for the company which would belong to the company and would be paid 15% of the gross sales of his work. Also, McCrary informed Scarboro that he would pay Scarboro's attorney fees as "protection" if Scarboro were sued for breach of contract.

During this time, Scarboro approached McDonald and informed her that he "wanted to get out" of the contract. He also informed her that he had been approached by some men who could make the reproduction molds themselves; that they wanted to give him a place to work and to sculpt and that they would pay him a salary. In response, McDonald stated her willingness to work with these unnamed men, and offered to allow them to make reproductions while she sold Scarboro's work. No agreement was reached concerning this proposition.

In early April 1985, Scarboro informed McDonald by telephone that he no longer considered their contract valid, that he needed a job, that she had experienced too many problems getting his art reproduced, and that he needed to make a living. On 16 April 1985, Scarboro sent a letter to McDonald to the same effect.

On 22 April 1985, Scarboro began work at Amtek pursuant to the terms of their oral agreement. Scarboro provided Amtek with more than 20 original sculptures and continued to work until he was enjoined from doing so.

Plaintiff filed her complaint and motion for preliminary injunction on 26 June 1985 against defendants Scarboro, Amtek and McCrary. The objective of plaintiff's preliminary injunction was to have defendants terminate the selling of the sculptures and for defendants to return all original sculptures that Scarboro had made since his employment with Amtek. On 15 July 1985, the

court granted plaintiff's preliminary injunction pursuant to the terms stated above.

On 3 September 1985, defendant Scarboro filed his answer, counterclaim and cross-claim. On 28 October 1985, defendants Amtek and McCrary filed their answer as well as a counterclaim against plaintiffs.

On 25 November 1985, plaintiff filed her reply to defendant Amtek's counterclaim. On 2 May 1986, defendant Scarboro filed his amended answer, counterclaim, and cross-claim against Mc-Crary and Amtek for attorney fees. In addition, Scarboro filed a third-party complaint against plaintiff's husband, Bill McDonald. On 21 July 1986, plaintiffs filed answer to the third-party complaint, and a reply to Scarboro's amended counterclaim. On 2 March 1987, defendants Amtek and McCrary filed their replies to defendant Scarboro's counterclaim.

This cause came on for trial before a jury on 2 March 1987. Based upon the issues presented, the jury found, *inter alia*: (1) that Amtek and McCrary unjustifiably induced Scarboro to breach his contract with McDonald, (2) that Amtek and McCrary interfered with the business practice and business relations of McDonald, (3) that these actions were in, or affected commerce, and (4) that McDonald was injured as a proximate result of the conduct of Amtek and McCrary. The jury awarded damages in favor of McDonald and against all defendants. Furthermore, the jury found for Scarboro on his cross-claim against McCrary and Amtek for attorney fees.

After the verdict, the trial court concluded that the facts found by the jury constituted unfair or deceptive trade practices in or affecting commerce in violation of G.S. 75-1.1(a) and therefore trebled the damages and awarded McDonald attorney fees pursuant to G.S. 75-16.1.

From the jury's verdict and the trial court's conclusions and award, defendant McCrary appealed. No appeal was perfected by defendant Scarboro or defendant Amtek.

[1] By his first Assignment of Error, defendant presents an issue of first impression for this Court to resolve, to wit, whether tortious interference with business or contractual relations is a violation of G.S. 75-1.1.

The overall purpose and legislative intent of G.S. 75-1.1 is "to declare deceptive acts or practices in the conduct of any trade or commerce in North Carolina unlawful, to provide civil means to maintain ethical standards of dealings between persons engaged in business and the consuming public within this State, and to enable a person injured by deceptive acts or practices to recover treble damages from a wrongdoer." *Hardy v. Toler*, 24 N.C. App. 625, 630-31, 211 S.E. 2d 809, 813, *modified on other grounds*, 288 N.C. 303, 218 S.E. 2d 342 (1975). Furthermore, "[t]he statutes do not protect only individual consumers, but serve to protect business persons as well." *Concrete Service Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 685, 340 S.E. 2d 755, 760 (1986) (citation omitted). Thus, disputes between competitors in business fall under the province of the statute. *See Harrington Manufacturing Co. v. Powell Manufacturing Co.*, 38 N.C. App. 393, 248 S.E. 2d 739 (1978), *cert. denied*, 296 N.C. 411, 251 S.E. 2d 469 (1979). Whether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has on the marketplace. *Bernard v. Central Carolina Truck Sales, Inc.*, 68 N.C. App. 228, 314 S.E. 2d 582, *disc. rev. denied*, 311 N.C. 751, 321 S.E. 2d 126 (1984). Based upon the jury's findings of fact, the court must determine as a matter of law whether a defendant's conduct violates this section. *Love v. Pressley*, 34 N.C. App. 503, 239 S.E. 2d 574 (1977), *disc. rev. denied*, 294 N.C. 441, 241 S.E. 2d 843 (1978).

No precise definition of "unfair methods of competition" as used in this section exists.

Unfair competition has been referred to in terms of conduct 'which a court of equity would consider unfair.' (Citation omitted.) Thus viewed, the fairness or unfairness of particular conduct is not an abstraction to be derived by logic. Rather, the fair or unfair nature of particular conduct is to be judged by viewing it against the background of actual human experience and by determining its intended and actual effects upon others.

*Harrington, supra* at 400, 248 S.E. 2d at 744. Furthermore, "[t]he concept of 'unfairness' is broader than and includes the concept of 'deception.'" *Overstreet v. Brookland, Inc.*, 52 N.C. App. 444, 453,

McDonald v. Scarboro

279 S.E. 2d 1, 7 (1981), *quoting, Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 263, 266 S.E. 2d 610, 621 (1980).

Unfair methods of competition have been found by this Court in actions involving competitive business relationships. In *Harrington, supra,* defendant's allegations that plaintiff incorporated into its automatic tobacco harvester a defoliator manufactured by defendant, and demonstrated this defoliator to potential customers as a product manufactured by plaintiff, was found to be similar to "passing off" of one's goods as those of a competitor and thus constituted an unfair method of competition.

In *United Artists Records, Inc. v. Eastern Tape Corp.*, 19 N.C. App. 207, 198 S.E. 2d 452, *cert. denied*, 284 N.C. 255, 200 S.E. 2d 653 (1973), this Court held that the defendants' appropriation of recording performances owned by plaintiff, by reproducing them on magnetic tapes for sale in competition with plaintiff's recording, constituted unfair competition. Furthermore, in *Pedwell v. First Union National Bank*, 51 N.C. App. 236, 275 S.E. 2d 565 (1981), this Court held that plaintiffs stated a claim under G.S. 75-1.1(a) by alleging that defendants conspired to defeat plaintiffs' real estate contract with one of the co-conspirators by having the other co-conspirator deny financing shortly before closing, when plaintiff could not timely obtain alternative financing.

Although federal court interpretations of state statutes are not binding on the North Carolina Courts, it is worthy to note that in *American Craft Hosiery Corp. v. Damascus Hosiery Mills, Inc.*, 575 F. Supp. 816 (W.D.N.C. 1983), that Court dealt with the precise issue under consideration in the case *sub judice*. In *American Craft*, the Court stated that "[f]rom a reading of all the cases on G.S. 75-1.1, it appears that a tortious interference with a contract *could* constitute an unfair method of competition or unfair acts within the meaning of the statute." *Id.* at 821. However, the Court in that case concluded that the facts did not constitute unfair competition because the plaintiff had an adequate remedy under traditional contract principles. The jury awarded ample damages to cover the loss and there was no showing of an unwarranted refusal by the defendant to pay the claim.

Taking into consideration the purposes of the statute and the analyses and holdings of the above-stated cases, we believe that the facts found by the court clearly support its conclusion that de-

fendants Amtek and McCrary engaged in unfair or deceptive acts. Defendant McCrary's contention that his actions had no impact on consumers or the marketplace, that his conduct did not offend established public policy and that his actions were not immoral, unethical, oppressive, unscrupulous or deceptive is wholly misplaced.

In our view, using a competitor's product, as McCrary did to the benefit of his company, despite the "bad bargain" that resulted from Scarboro's previous dealings with plaintiff, does not justify defendant's actions and is patently unfair. To undermine a competitor's potentially lucrative business opportunity, by taking its source of new income from an employee under contract, while at the same time marketing its product as one's own, is both unfair and deceptive. It is akin to the "pirating" of plaintiff's product. *See, United Artists, supra.*

The public has been deceived into believing that Amtek is the employer of the folk artist who created this fine art, when in fact the defendant is under contract with McDonald, one of his competitors or potential competitors. It is noteworthy that plaintiff saw the potential of an advantageous relationship when she indicated to Scarboro that she could market and sell the product, that Scarboro could produce the art, and that Amtek could manufacture it. This relationship could most certainly have been advantageous to all. Yet, defendants did not make any attempt to contact McDonald to ascertain whether the marketing and manufacturing of Scarboro's sculptures could be a profitable venture. Instead they chose to "bust" the McDonald/Scarboro contract, hire defendant while still under that contract and market the very product to which Scarboro had assigned all his rights.

We believe that his conduct taken to its extreme would lead to a monopolistic system, whereby contracts would have no force or validity and the free flow of commerce, at least as far as competitors in specific businesses are concerned, would be eroded and eventually destroyed. We do not believe that this is pure speculation, for the very intent of the statute has this ideal in mind. The act is directed toward maintaining ethical standards in dealings between persons engaged in business and to promote good faith at all levels of commerce. *Hardy, supra.* Unfair methods of competition, which were exhibited by defendants Amtek and McCrary

in the case *sub judice*, would not promote good faith at any level of commerce.

The trial court found as a matter of law that defendants had violated G.S. 75-1.1(a) by their tortious interference with the business relations of plaintiff. Thus, based upon the facts in the case *sub judice*, we believe that the trial court did not err in its judgment.

[2] By his next two Assignments of Error, defendant contends that the trial court erred in refusing to grant his Rule 50 motion to dismiss plaintiff's claims of wrongful inducement and interference. He asserts that McDonald's "contract" with Scarboro was not valid as a matter of law and that plaintiff has failed to sufficiently establish wrongful interference. In support of these contentions, defendant contends that the McDonald/Scarboro contract was oppressive, that McDonald fraudulently induced Scarboro to sign the contract, and that the McDonald/Scarboro contract was void because it was executed during the period of time in which Scarboro had a contract with Stovall. We find these arguments meritless.

Upon a motion for a directed verdict, all evidence which supports a plaintiff's claim must be taken as true and considered in the light most favorable to plaintiff, giving to plaintiff the benefit of every reasonable inference which may legitimately be drawn therefrom, and with contradictions, conflicts and inconsistencies being resolved in plaintiff's favor. *Husketh v. Convenient Systems, Inc.*, 295 N.C. 459, 245 S.E. 2d 507 (1978).

As to defendant's contentions concerning the issues of oppression and fraud, we have carefully reviewed the record and find no evidence of oppression or fraud.

As to defendant's contention that the Stovall contract invalidated the McDonald/Scarboro contract, we believe it is based on contradictory evidence. The record reflects that Stovall indicated the contract terminated on 2 January 1985, whereas Scarboro indicated the contract terminated on 13 September 1984. Scarboro related the latter date to McDonald. Furthermore, McDonald testified that she did not see the Stovall contract and did not know of a later termination date until depositions were taken in this civil action in November 1985.

We are guided by defendant's reference to 17 Am. Jur. 2d *Contracts* Section 187 (1964). It states that *"[k]nowledge* on the part of the party seeking to recover on such an agreement that the agreement sued on was inconsistent with and involved a breach of a prior contract between one of the parties and a third person [is] the first prerequisite to a denial by the court of the validity and enforcement of the second agreement." Thus, viewing the evidence in the light most favorable to plaintiff, the evidence reveals that McDonald understood that the prior contract between Scarboro and Stovall had been terminated as of 13 September 1984 and had no knowledge that the agreement between her and Scarboro may have been inconsistent with or involved a breach of Scarboro's prior contract with Stovall. Thus, based on the evidence, it was not error for the trial court to deny defendants' motion.

[3] By his next Assignment of Error, defendant contends that the trial court erred when it denied his Rule 50 motion on the issue of McCrary's indemnification of Scarboro's attorney fees. He argues that there is insufficient evidence to show the existence of a contract for attorney fees, and in the alternative, that the trial judge awarded an improper amount of damages.

"A contract of indemnity need not be express; indemnity may be recovered if the evidence establishes an implied contract. In addition, a right to indemnity exists whenever one party is exposed to liability by the action of another who, in law or equity, should make good the loss of the other." 41 Am. Jur. 2d *Indemnity* Sec. 19 (1968). We believe the evidence was sufficient to establish the existence of an implied in fact contract. There was testimony elicited by Scarboro that defendant McCrary informed him that an attorney would be provided in the event he (Scarboro) was sued by McDonald. Scarboro's deposition testimony of the same import was also admitted.

The remaining issue on this assignment of error is whether the trial judge awarded an improper amount of attorney fees to defendant Scarboro. We believe the trial court erred. The jury answered in the affirmative to the question of whether defendants McCrary and/or Amtek represented that they would indemnify Scarboro for his attorney fees if sued by plaintiff McDonald. We believe that the jury, the trier of fact, should have been

allowed to determine whether defendant breached the contract, and if so, the amount of damages to which he is entitled.

The only evidence submitted to the jury as to the amount of legal expenses incurred by defendant Scarboro was the amount of $7,000.00. At the time of the trial, no bill had been submitted by Scarboro's present attorney. The affidavit submitted by Scarboro's attorney was not presented as evidence for the jury to consider. Since this was in fact an action on contract to recover attorney fees, we believe it was an issue for the jury to decide. Thus, the trial court erred when it awarded defendant Scarboro attorney fees in the amount of $12,090.00.

[4]  Defendant next contends that the trial court erred in granting plaintiff attorney fees in the amount of $27,686.10 because such an amount is not a reasonable fee. Defendant contends the fee is unreasonable due to excessive interview conferences, excessive review of the files, excessive hourly rates and excessive copy charges. We disagree.

G.S. 75-16.1 authorizes the presiding judge to allow a *reasonable* attorney fee to the duly licensed attorney representing the prevailing party upon the finding of certain facts. Award or denial of such fees, even where supporting facts exist, is within the discretion of the trial judge. *Varnell v. Henry M. Milgrom, Inc.*, 78 N.C. App. 451, 337 S.E. 2d 616 (1985). We find no abuse of that discretion here. Furthermore, defendant contends that the court made no findings as to reasonableness of rates and hours in determining the reasonableness of the fee. We find no merit to this argument, because as per G.S. 75-16.1, the court made appropriate findings of fact as it was required to do. Thus, we find no error in the award of attorney fees.

As to defendant's remaining two Assignments of Error, we find them meritless and without need for discussion.

Finally, we note that defendant has not brought forward three of his assignments of error. We deem them abandoned and decline to review them. N.C.R. App. P., Rule 28(b).

Accordingly, for all the aforementioned reasons, we remand this case to the trial court for a jury determination on the proper amount of counsel fees to be awarded to defendant Scarboro, un-

der the implied in fact contract, and affirm the remainder of the judgment.

Affirmed in part; remanded in part.

Judge ORR concurs.

Chief Judge HEDRICK concurs in the result.