**NORTHEAST SOLITE CORPORATION, a Virginia corporation, Plaintiff,**

v.

**UNICON CONCRETE, LLC, a Delaware corporation, Defendants,**

**and**

**Unicon Concrete, LLC, Third–Party Plaintiff,**

v.

**Solite Corporation, Third–Party Defendant,**

**and**

**Solite Corporation, Counter-claimant,**

v.

**Unicon Concrete, LLC, Counter-defendant.**

**No. 1:98CV00872.**

United States District Court, M.D. North Carolina.

April 10, 1999.

Charles William McIntyre, Jr., Laura R. White, McGuire Woods Battle & Boothe, L.L.P., Richmond, VA, Kurt E. Lindquist, II, Fred M. Wood, Jr., Stephen R. Calkins, McGuire Woods Battle & Boothe, LLP, Charlotte, NC, for Northeast Solite Corporation, a Virginia corporation, plaintiff.

Mark Alan Jones, Vernon Vernon Wooten Brown Andrews & Garrett, P.A., Burlington, NC, Alfred Ferrer, III, Eaton & Van Winkle, New York City, for Unicon Concrete, LLC, a Delaware corporation, defendant.

Mark Alan Jones, Vernon Vernon Wooten Brown Andrews & Garrett, P.A., Burlington, NC, Alfred Ferrer, III, Eaton &

Van Winkle, New York City, for Unicon Concrete, LLC, third-party plaintiff.

Mark S. Brennan, Sr., Wright Robinson Osthimer & Tatum, Richmond, VA, for Solite Corporation, a Virginia Corporation, third-party defendant.

Mark S. Brennan, Sr., Wright Robinson Osthimer & Tatum, Richmond, VA, for Solite Corporation, counter-claimant.

Mark Alan Jones, Vernon Vernon Wooten Brown Andrews & Garrett, P.A., Burlington, NC, Alfred Ferrer, III, Eaton & Van Winkle, New York City, for Unicon Concrete, LLC, counter-defendant.

## MEMORANDUM OPINION

BULLOCK, District Judge.

Now before the court is Third–Party Defendant Solite Corporation's ("Solite") motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In its motion to dismiss, Solite asserts that Third–Party Plaintiff Unicon Concrete, LLC ("Unicon") may not seek indemnity or contribution for any damages resulting from Unicon's intentional misconduct and, alternatively, that Solite cannot be held responsible for any damages inflicted upon Plaintiff Northeast Solite Corporation ("NE Solite") prior to May 25, 1998.

Also before the court are NE Solite's motion for leave to amend its complaint and Unicon's cross-motion for leave to amend its answer and other relief.

## PROCEDURAL HISTORY

NE Solite filed this diversity action on October 5, 1998, against Unicon seeking damages for breach of contract, breach of implied promise, breach of implied covenant of good faith, civil conspiracy, and unfair and deceptive trade practices. On April 19, 1999, this court denied Unicon's motion to dismiss NE Solite's complaint. On May 3, 1999, Unicon filed an answer denying the mere allegations of NE Solite's complaint. On November 3, 1999, Unicon filed a third-party complaint against Solite seeking contribution or indemnity for any damages for which Unicon is found liable to NE Solite. Solite filed an answer and counterclaim on December 17, 1999. Solite also filed a motion to dismiss Unicon's third-party complaint for failure to state a claim upon which relief can be granted.

On February 1, 2000, NE Solite filed a motion for leave to amend its complaint. Unicon responded with a cross-motion for leave to amend its answer and other relief.

## FACTS

At this stage of the litigation, the court views the allegations in the third-party complaint in the light most favorable to Unicon. On November 18, 1994, Solite and Unicon entered into an asset purchase agreement pursuant to which Solite sold its Lightweight Block–Wilmington Corporation ("the Wilmington plant") to Unicon. In connection with the sale, Solite and Unicon entered into a non-competition agreement pursuant to which Solite agreed to not engage in the concrete block business in certain specified counties in North Carolina ("the covered territory"). In consideration for this promise, Unicon agreed to pay Solite the greater of (1) a twenty-cent (20¢) royalty per eight-inch (8″) block equivalent of concrete in excess of three million (3,000,000) such blocks sold per year in the covered territory or (2) twenty-five per cent (25%) of the Wilmington plant's annual profits in excess of $451,000.00 from sales in the covered territory.

On April 29, 1998, Solite spun off NE Solite and assigned the non-competition agreement to NE Solite. The assignment included "all of [Solite's] right, title and interest" in the non-competition agreement as "may have been amended or supplemented from time to time." (Third–Party Complaint, Ex.2). Thereafter, on May 25, 1998, although Solite lacked authority to do so, Solite and Unicon amended the asset purchase agreement which modified

the royalty obligations under the non-competition agreement. Solite agreed to the amendment despite the fact it had already assigned the non-competition agreement to NE Solite. In contrast, Unicon had no knowledge of the assignment and believed that Solite had authority to negotiate and enter into the amendment. Relying on Solite's apparent authority to modify the contract, Unicon purchased a concrete plant in New Bern in compliance with the amended non-competition agreement.

Unicon denies any liability to NE Solite. However, Unicon asserts that, if it is found liable to NE Solite, liability is due solely to its justifiable reliance on Solite's negligent or false representations of authority to enter into the amendment of the non-competition agreement. On this basis, Unicon seeks recovery from Solite through contribution and indemnity.

## DISCUSSION

Dismissal under Rule 12(b)(6) is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, the court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Revene v. Charles County Comm'rs,* 882 F.2d 870, 872 (4th Cir.1989).

■ Actions for indemnification are generally brought by means of a third-party complaint. *Teachy v. Coble Dairies, Inc.,* 306 N.C. 324, 332, 293 S.E.2d 182, 187 (1982). "[A] right to indemnity exists whenever one party is exposed to liability by the action of another who, in law or equity, should make good the loss of the other." *McDonald v. Scarboro,* 91 N.C.App. 13, 22, 370 S.E.2d 680, 686 (1988)

(quoting 42 Am.Jur.2d Indemnity § 19 (1968)). In an indemnity contract, one party "engage[s] ... to make good and save another harmless from loss on some obligation which he has incurred or is about to incur to a third party." *New Amsterdam Cas. Co. v. Waller,* 233 N.C. 536, 537, 64 S.E.2d 826, 827 (1951). "In the absence of an express contract, the right to indemnity may be based upon an implied contract." *Indemnity* 41 Am. Jur.2d § 25 (1995). North Carolina cases recognize both implied in fact and implied in law contractual indemnity. *Terry's Floor Fashions, Inc. v. Georgia–Pacific Corp.,* 1998 WL 1107771 at *7 (E.D.N.C. July 23, 1998). Accordingly, under North Carolina law, a right to indemnity may be based on one of the following: "(1) an express contract; (2) a contract implied in fact; or (3) equitable concepts arising from the tort theory of indemnity, often referred to as a contract implied in law." *Id.* at *6. "However, where a party does not have either an express or implied contractual relationship with a person from whom he is seeking indemnity, the party is not entitled to indemnification." 41 Am.Jur.2d § 25 (1995).

■ Implied-in-fact indemnity is a contractual theory of indemnification under which "the relationship between plaintiff and defendant is such that the court must imply a right to indemnity on plaintiff's behalf." *Terry's Floor Fashions,* 1998 WL 1107771, at *8. "Contractual indemnity that is implied in fact suggests the existence of a binding contract between two parties that fairly implies the right to indemnity. In such a situation, the right to indemnity arises from the relationship between the parties and the circumstances of the parties' conduct and the essence of such a claim is the intent of the parties to create an indemnitor/indemnitee relationship." *Id.* at *7. In determining whether the relationship between the parties "compel[s] the court to imply a right to indemnity on behalf of [the] plaintiff," the court should not lose sight of the fact that the

plaintiff could have "freely negotiate[d] ... protecti[on][for] itself" but chose otherwise. *Terry's Floor Fashions,* 1998 WL 1107771, at *8. Accordingly, Plaintiff must allege "special circumstances from which such an agreement might be implied" to establish a right to indemnity. *Id.* Such circumstances include words or conduct tending to show the existence of an oral or written indemnification agreement.[1]

■ Implied-in-law indemnity is an equitable theory of indemnification "result[ing] either from a tortious wrong ... or from one that is contractual." *Cox v. Shaw,* 263 N.C. 361, 367, 139 S.E.2d 676, 681 (1965). A particular quasi-contract can be of a tortious or contractual origin. *See id.* "A quasi-contractual obligation is one that is created by the law for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent.... It would be better not to use the word 'contract' at all." *Id.* (quoting 1 Corbin, Contracts § 19 (1963 ed.)). Implied-in-law indemnity is most frequently utilized in the tort context as a means of resolving liability among defendants. Thus, the primary way in which "the right to indemnity by operation of law arises [is] out of a tort claim against two alleged joint tortfeasors." *Terry's Floor Fashions,* 1998 WL 1107771, at *8 (citing *Teachy,* 306 N.C. at 332, 293 S.E.2d at 187). The North Carolina Supreme Court has held that "a party secondarily liable in a tort action is entitled to indemnity from the party primarily liable ... when the active negligence of one tort-feasor and the passive negligence of another tort-feasor combine and proximately cause an injury to a third person." *Hunsucker v. High Point Bending & Chair Co.,* 237 N.C. 559, 563, 75 S.E.2d 768, 771 (1953). Consequently, implied-in-law indemnity is not permitted in favor of the primarily liable party or "when the defendants are *in pari*

*delicto,* that is, when both defendants breach substantially equal duties owed to the plaintiff." *Kim v. Professional Bus. Brokers Ltd.,* 74 N.C.App. 48, 51, 328 S.E.2d 296, 299 (1985). In sum, the primary distinction between the two theories is that implied-in-fact indemnity involves a true contract based on implied consent while implied-in-law indemnity is a legal fiction used to avoid unfairness.

■ Unicon has not asserted the existence of an express indemnification agreement with Solite, instead seeking indemnity based on implication. To the extent that Unicon can show justifiable reliance on Solite's agreement to the amendment as the basis for its breach of the non-competition contract with NE Solite, Unicon might be able to recover from Solite for its contractual liability to NE Solite under an implied indemnification theory. Unicon has made factual allegations which, if supported by sufficient evidence and ultimately proven, could require an indemnity on the part of Solite. Assuming Unicon's allegations to be true, as the court must do at this stage of the proceedings, Unicon justifiably relied on Solite's agreement to the amendment of the asset-purchase agreement which caused Unicon's breach of the non-competition contract with NE Solite. Accordingly, absent some other basis for barring this action, it would be improper to dismiss Unicon's indemnity claim at the pleading stage.

■ In supporting its motion to dismiss, Solite asserts two grounds for denying indemnity. Solite first argues that Unicon may not seek indemnity because NE Solite's complaint contains allegations of intentional misconduct. Solite cites a North Carolina Court of Appeals case, *Lewis v. Dunn Leasing Corp.,* 36 N.C.App. 556, 560, 244 S.E.2d 706, 709 (1978), for the

---

1. For example, in *McDonald v. Scarboro,* 91 N.C.App. 13, 22, 370 S.E.2d 680, 686 (1988), the North Carolina Court of Appeals held that a defendant had submitted sufficient evidence to establish the existence of an implied-in-fact

contract for indemnity with respect to attorney's fees where another defendant had orally agreed to provide him with an attorney in the event he was sued by plaintiff for breach of contract.

proposition that a party cannot be indemnified for its own intentional misconduct. In interpreting an express indemnification agreement, *Lewis* held that "an indemnity contract purporting to relieve one from liability for his own negligence is not favored and will be strictly construed. At the very least, this rule of construction should be extended to contracts purporting to relieve one from liability for intentional torts." 36 N.C.App. at 560, 244 S.E.2d at 709. The *Lewis* court, *in dicta*, also suggested that it was "inclined to agree with plaintiffs that if the [indemnity] provision at issue were construed to relieve the defendant from its liability for its intentional torts, such a provision would be void as against public policy." *Id.* Accordingly, under North Carolina law, it may well be true that implied indemnity, like contribution, is not permitted in favor of a tortfeasor found liable for an intentional tort or even a tort involving the lesser charge of willful and wanton misconduct.[2] *See* Uniform Contribution Among Joint Tort–Feasors Act (the "Uniform Act"), N.C.Gen. Stat. § 1B–1(c) (contribution is not proper "in favor of any tortfeasor who has intentionally caused or contributed to the injury").

Even assuming this *dicta* from a case involving an express indemnification agreement to be controlling, it would be improper to dispose of Unicon's indemnity claim on a Rule 12(b)(6) motion. The court finds the *Lewis* case wholly inapplicable to NE Solite's garden-variety contract-based claims. Furthermore, the court is unwilling to hold that indemnity is precluded as a matter of law by virtue of a

plaintiff's supplementing its simple breach of contract action with tort-based claims. The court has found no cases in which the mere presence of tort-based allegations somehow tainted routine breach of contract claims and thereby made indemnity impermissible. Accordingly, dismissal of this action would be improper with respect to the contract-based claims.

The possibility of Unicon seeking indemnity or contribution from Solite on NE Solite's unfair and deceptive trade practices and civil conspiracy claims may be somewhat tenuous because of the *Lewis* case and the language of the Uniform Act. These claims are clearly tortious in nature and have been characterized as intentional misconduct.[3] *See Young v. FDIC*, 103 F.3d 1180, 1190 (4th Cir.1997) (civil conspiracy and fraudulent misrepresentation are intentional torts); *Horton v. New South Ins. Co.*, 122 N.C.App. 265, 268, 468 S.E.2d 856, 858 (1996) (describing unfair and deceptive trade practices and civil conspiracy to commit fraud as personal tort claims rather than contract claims). However, because of the exculpatory nature of Unicon's allegations, it would be premature for the court to decide the availability of indemnity or contribution with respect to these tort-based claims. Unicon denies intentionally causing or contributing to NE Solite's injury. Unicon asserts that its alleged tortious conduct was not purposefully committed, but rather was the result of a misrepresentation of authority on the part of Solite by entering into the amendment of the non-competition agreement. Thus, Unicon has made allegations which, if supported by facts and ultimately prov-

---

**2.** One commentator referred to this self-explanatory principle as the "obvious fact that there can be no indemnity in favor of the intentional or reckless tortfeasor himself." William L. Prosser, *Torts* at 312 (4th ed.1982).

**3.** Even if these tort claims do not rise to the level of intentional misconduct, Unicon may have difficulty construing Solite's role in this matter as that of the primarily liable party, thereby entitling Unicon to indemnity. Similarly, Unicon may find it difficult to receive

contribution under the Uniform Act. The Uniform Act, which provides rights of contribution among joint tortfeasors, provides that "[i]f the independent wrongful acts of two or more persons unite in producing a single indivisible injury, the parties are joint tortfeasors within the meaning of the law." *Cox v. Robert C. Rhein Interest, Inc.*, 100 N.C.App. 584, 587, 397 S.E.2d 358, 360 (1990) (quoting *Phillips v. Hassett Mining Co.*, 244 N.C. 17, 22, 92 S.E.2d 429, 433 (1956)).

en, could entitle it to recovery from Solite for its obligations to NE Solite. *See Barnard v. Rowland*, 132 N.C.App. 416, 429, 512 S.E.2d 458, 467 (1999) (noting that a third-party plaintiff had no claim to contribution where the jury determined that he trespassed upon plaintiff's property "purposefully" and thus not as "a result of a misrepresentation of property lines by the [third-party defendant].").

Solite's second ground for dismissal is basically a request to impose a temporal limitation on the scope of Unicon's indemnification action. The court agrees with Solite's uncontested assertion that it cannot, as a matter of law, be liable for any damages which resulted prior to its alleged negligence or misrepresentation, that is, Solite's unauthorized agreement to the amendment and failure to inform Unicon of its assignment of the non-competition agreement to NE Solite. Therefore, the court concludes that Solite is not liable to Unicon under an implied indemnification theory for any of NE Solite's damages that can be shown to have accrued prior to Solite's acceptance of the amendment on May 25, 1998.

Based on a lack of discernable prejudice to Unicon and the absence of bad faith on the part of NE Solite, the court determines that NE Solite is entitled to amend its complaint to clarify its claims. *See United States v. Pittman*, 209 F.3d 314, 2000 WL 305526, at *2 (4th Cir. Mar.24, 2000) ("Under Rule 15(a) leave to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment."). Having granted NE Solite leave to amend its complaint, the court will also grant Unicon's motion to amend its answer to correct a typographical error. Extension of the discovery period as requested by Unicon in its cross-motion will be denied without prejudice, subject to renewal before the magistrate judge if not otherwise moot.

### CONCLUSION

For the foregoing reasons, the court will deny the Third–Party Defendant's motion to dismiss but will impose a temporal limitation on the scope of the Third–Party Plaintiff's indemnification action.